1   DAVID L. ANDERSON (CABN 149604)
2   United States Attorney

3   HALLIE HOFFMAN (CABN 210020)
4   Chief, Criminal Division

5   CHRISTINA LIU (CABN 308362)
6   Assistant United States Attorney

7        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
8        Telephone: (415) 436-7199
         Fax: (415) 436-7234
9        christina.liu@usdoj.gov

10

11   Attorneys for the United States

12

13                          UNITED STATES DISTRICT COURT

14                       NORTHERN DISTRICT OF CALIFORNIA

15                            SAN FRANCISCO DIVISION

16

17   UNITED STATES OF AMERICA,              )   CASE NO. CR 20-00013 CRB
                                            )
18            Plaintiff,                     )
                                            )   UNITED STATES' OPPOSITION TO
19        v.                                )   DEFENDANT'S MOTION TO DISMISS THE
                                            )   INDICTMENT
20   HOWARD WEISS,                          )
                                            )
21            Defendant.                     )   Court:        Hon. Charles R. Breyer
                                            )   Hearing Date:  May 13, 2020
22                                          )   Hearing Time:  1:30 p.m.
                                            )
23   _____)

24

25

26

27

28

## TABLE OF CONTENTS

I.      **INTRODUCTION** ................................................................................................ 1

II.    **STATEMENT OF FACTS** .............................................................................. 1

     A.    The October 2, 2018 Email (Ex. A1). .................................................... 2

     B.    The October 22, 2018 Email (Ex. A2). .................................................. 3

     C.    The November 2, 2018 Interview (Ex. A9). ........................................... 3

     D.    The January 3, 2019 Email (Ex. A3)....................................................... 3

     E.    The April 9, 2019 Email (Ex. A4)........................................................... 4

     F.    The May 1, 2019 Interview (Ex. A10)...................................................... 5

     G.    The June 5, 2019 Email (Ex. A5)............................................................ 5

     H.    The June 19, 2019 Email (Ex. A6)........................................................... 5

     I.    The July 19, 2019 Email (Ex. A7). .......................................................... 6

     J.    The October 16, 2019 Email (Ex. A8). ................................................... 7

     K.    The November 13, 2019 Interview (Ex. A11). ....................................... 7

III.   **PROCEDURAL POSTURE** ........................................................................... 8

IV.   **ARGUMENT** .................................................................................................... 8

     A.    Defendant's conduct falls squarely within the scope of § 223(a)(1)(C), which prohibits the harassing use of a telecommunications device in certain circumstances. ...................................................................................... 8

     B.    The facial vagueness challenge fails because defendant lacks standing and because the statute is clearly defined. .................................................... 9

     C.    Under the established principles of overbreadth, the statute is not overly broad because it targets conduct, not speech, and any restrictions on protected speech are not substantial, both in an absolute sense and in relation to the its legitimate sweep............................................................................................................ 12

     D.    As to the as-applied challenge, the charged conduct is not protected by the First Amendment because it consists of conduct, not speech, and any incidentally burdened speech is speech integral to criminal conduct. ...................................... 17

V.    **CONCLUSION** ............................................................................................... 21

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*Adams v. Ford Motor Co.*, 653 F.3d 299 (3d Cir. 2011) ...................................................... 10

*Ashcroft v. ACLU*, 535 U.S. 564 (2002) ............................................................................ 17

*Boos v. Barry*, 485 U.S. 312 (1988).................................................................................. 10

*Bowker v. United States*, 543 U.S. 1182 (2005) ................................................................. 1

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ................................................................... 9

*Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786 (2011)................................................... 12, 17

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) ........................................................... 12

*Edge v. City of Everett*, 929 F.3d 657 (9th Cir. 2019) ............................................ 10, 11, 12

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)............................................. 18

*Parker v. Levy*, 417 U.S. 733 (1974) ................................................................................. 9

*Planned Parenthood of Cent. & N. Ariz. v. Arizona*, 718 F.2d 938 (9th Cir. 1983).............. 9

*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................ 17, 20

*United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004).............................................. *passim*

*United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006)......................................... *passim*

*United States v. Lampley*, 573 F.2d 783 (3d Cir. 1978)................................................. 9, 14

*United States v. Meredith*, 685 F.3d 814 (9th Cir. 2012).............................................. 18, 20

*United States v. Morrison*, 529 U.S. 598 (2000) ............................................................. 13

*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) ............................................ 9, 10, 18, 19

*United States v. Popa,* 187 F.3d 672 (D.C. Cir. 1999) .............................................. 18, 19, 20

*United States v. Sandhu*, 740 F. App'x 595 (9th Cir. 2018) .............................................. 19

*United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014)...................................................... 16

*United States v. Sineng-Smith*, 910 F.3d 461 (9th Cir. 2018)................................ 13, 14, 18, 20

*United States v. Stevens*, 559 U.S. 460 (2010)................................................................. 13, 17, 21

*United States v. Sutcliffe*, 505 F.3d 944 (9th Cir. 2007) ...................................... 10, 12

*United States v. Waggy*, 936 F.3d 1014  (9th Cir. 2019) ................................. 16, 17, 18, 19, 21

*United States v. Williams,* 553 U.S. 285 (2008) ...................................... 11, 12, 13, 14

*Virginia v. Black*, 538 U.S. 343 (2003)................................................................. 10

*Virginia v. Hicks*, 539 U.S. 113 (2003)................................................................. 13, 14, 17, 18

**Federal Statutes**

18 U.S.C. § 875(c) ................................................................................... 10

18 U.S.C. § 2261(A)(2)(A) ....................................................................... 10, 16

47 U.S.C. § 223(a)(1)(C) ........................................................................ *passim*

47 U.S.C. § 223(a)(1)(D) .......................................................................... 19

47 U.S.C. § 223(h)(1)(C) .......................................................................... 9, 15

## I.      INTRODUCTION

Defendant Howard Weiss is charged with the harassing use of a telecommunications device in violation of 47 U.S.C. § 223(a)(1)(C), Dkt. No. 1 (Indictment), without disclosing his identity and with intent to harass U.S. Senator Mitch McConnell.

The United States files this opposition in response to his motion to dismiss the indictment on First Amendment grounds. *See* Dkt. No. 15 (Def.'s Mot. to Dismiss the Indictment ("Mot.")). Defendant first mounts an as-applied challenge, claiming that his actions fall outside the traditional categories of unprotected speech and that strict scrutiny applies. *Id.* at 2-9. He then raises facial challenges to the § 223(a)(1)(C) by asserting that Internet communications should receive special treatment and that the statute, in this context, is both overbroad and void-for-vagueness. *Id.* at 10-14.

His arguments lack merit and should be denied. First, defendant has no standing for a vagueness challenge because his conduct falls squarely within the scope of the statute. Even if he had standing, § 223(a)(1)(C) survives his vagueness challenge because its statutory language is sufficiently clear.

Second, § 223(a)(1)(C) is not facially overbroad because it targets conduct rather than speech and, if it burdens protected speech, it does not do so substantially in an absolute sense or in relation to its legitimate sweep. *See United States v. Eckhardt*, 466 F.3d 938, 943-44 (11th Cir. 2006) (rejecting facial and as-applied overbreadth challenges to § 223(a)(1)(C)); *United States v. Bowker*, 372 F.3d 365, 378-80 (6th Cir. 2004), *vacated on other grounds by Bowker v. United States*, 543 U.S. 1182 (2005) (same).

Third, the as-applied challenge fails because the indictment charges defendant with engaging in unlawful conduct, not speech. To the extent that § 223(a)(1)(C), which targets conduct, incidentally burdens speech, that speech is integral to criminal conduct and falls within a traditionally recognized carve-out from First Amendment protection.

Thus, this Court should deny defendant's motion to dismiss the indictment in its entirety.

## II.     STATEMENT OF FACTS

From October 2018 through October 2019, defendant used his cell phone to send a total of eight emails to Senator McConnell, all without revealing his identity and, as defendant admitted during a November 2019 interview, with the intent to harass Senator McConnell. Defendant sent the emails from

the Northern District of California, and they were received by the Senator's office in Washington, D.C.

The eight emails are attached to this filing as Exhibits A1 through A8. *See* Decl. of AUSA Christina Liu in Support of United States' Opp. to Def.'s Mot. to Dismiss ("Liu Decl."), Exs. A1 (Oct. 2, 2018 Email), A2 (Oct. 22, 2018 Email), A3 (Jan. 3, 2019 Email), A4 (Apr. 9, 2019 Email), A5 (June 5, 2019 Email), A6 (June 19, 2019 Email), A7 (July 22, 2019 Email), A8 (Oct. 16, 2019 Email).

Defendant explained how and why he sent these emails during three interviews. The audio recordings of the interviews are attached to this filing as Exhibits A9 through A11. *See* Liu Decl., Exs. A9 (Nov. 2, 2018 Interview), A10 (May 1, 2019 Interview), and A11 (Nov. 13, 2019 Interview).

### A.    The October 2, 2018 Email (Ex. A1).

On October 2, 2018, defendant, who lives in the Northern District of California, used his cell phone to send an email to Senator McConnell, the U.S. Senator representing Kentucky. Ex. A1; Ex. A11 at 4:50-5:17 (defendant agreeing, in response to seeing eight identified emails, he "probably sent it"), 6:40-6:45 (defendant stating he sent the emails by cell phone). Defendant later explained that he used Kentucky aliases to ensure the Senator would receive the emails. Ex. A11 at 1:13-1:25.

The October 2, 2018 email, which defendant sent under a fictitious Kentucky alias, is reproduced in substance below:

2. Ms. Sylvia Buccatini
   76623 Sylvan Ave
   Louisville, Kentucky 40025
   5027773443 (H)
   turtletheresistancewillbtherefritokillu@hotmail.com
   10/2/18
   73.162.224.166
   turtle,
   If you push this for Friday, the resistance is coming to DC to slash your throat. You will die in thestreet by DC resistance motherfucker!!!!!
   You will not live to regret it!!!!!!

Ex. A1. Defendant did not include his own name or otherwise identify himself in this email. *See id.*

In his November 2019 interview, after a law enforcement officer showed him a copy of this email and asked about the "turtletheresistancewillbtherefritokillu" email address, defendant admitted to

sending this email.  Ex. A11 at 5:19-5:30.  He also stated that his intent in sending emails to Senator

McConnell was to harass him.  *Id.* at 3:11-3:20, 3:27-4:44.

**B.      The October 22, 2018 Email (Ex. A2).**

On October 22, 2018, defendant used his cell phone to send the following email to Senator

McConnell with another fictitious Kentucky alias:

> Airman Mitchell Valenti
> 1234 Repubmotherfucker Ave
> Resitance, Kentucky 00637
> 7778880022 (H)
> criminalturtleisdone@deadrepublican.net
> <IP>73.162.224.166</IP>
> turtle cum drinker, The yelling resistance should have put a bullet in your head and then kill
> all the people you love!

Ex. A2; *see* Ex. A11 at 4:50-5:17, 6:40-6:45 (defendant admitting he sent the emails and that it was by

cell phone).  Defendant did not disclose his true identity in this email, *see* Ex. A2, and later told law

enforcement officers that he selected the name "Airman Mitchell Valenti" and other aliases from a list of

sample names online, Ex. A11 at 6:11-6:35.   Defendant's intent in sending this email was to harass

Senator McConnell.  *See id.* at 3:11-3:20, 3:27-4:44.

**C.      The November 2, 2018 Interview (Ex. A9).**

In November 2018, defendant spoke to a law enforcement officer about the October 22, 2018

email during a recorded interview.  *See* Ex. A9.  He initially claimed that he could not remember if he

sent an email to Senator McConnell, but then admitted moments later that this must have been the case.

*Id.* at 1:00-1:28.  Defendant explained that made it appears as though the email were sent by a person

with a different state, address, email address, and phone number, to ensure that Senator McConnell

would receive the email.  *Id.* at 5:45-6:08.  The officer ended the interview by suggesting that defendant

be "mindful," because other people could perceive his email as a threat.  *Id.* at 6:15-6:45.

**D.      The January 3, 2019 Email (Ex. A3).**

On January 3, 2019, defendant used his cell phone to send the email below to Senator

McConnell, with a fictitious Kentucky alias, without revealing his identity, and with intent to harass:

Brigadier General Salvatore Giovanni
11306 Bodley Drive
Louisville, Kentucky 40223-1339 KY03
5026379945 (H)
gofuckurself@hotmail.com

Date: 1/3/2019 8:59:54 PM
Subject: Your intelligence is zero
<IP>73.162.224.166</IP>

<ISSUE>INTELLIGENCE</ISSUE>
<MSG>You motherfucking scumbag crook turtle
Go fuck yourself. I have been furloughed and you heartless bastard could give a shit. You
fucking criminal. Someone needs to kill you!

You are going to lose next election and we will get rid of your satanic evil ass you loser
fuckhead</MSG>

Ex. A3 (excerpted); *see* Ex. A11 at 3:11-3:20, 3:27-4:44, 4:50-5:17, 6:40-6:45.

**E.     The April 9, 2019 Email (Ex. A4).**

On April 9, 2019, defendant used his cell phone to send the email below to Senator McConnell,
again with a fictitious alias from Kentucky, without disclosing his identity, and with harassing intent:

Date: Tue, 9 Apr 2019 14:11:31 -0400 (EDT)
From: no-reply@mcconnell.senate.gov
To: webmail@mcconnell-iq.senate.gov
Message-ID: <357306803.8297.1554833491900@localhost>
Subject: You are a criminal russian asset

<IP>73.162.224.166</IP>
<APP>SCCMAIL
<PREFIX>Dr.</PREFIX>
<FIRST>Jehova</FIRST>
<LAST>Stark</LAST>
<ADDR1>733 N. Barbee Way</ADDR1>
<ADDR2></ADDR2>
<CITY>Louisville </CITY>
<STATE>KY</STATE>
<ZIP>40025</ZIP>
<PHONE>5024597761</PHONE>
<EMAIL>TheResistancewillexecuterepubs@fahrenheit.com</EMAIL>
<ISSUE>CRIME</ISSUE>
<MSG>Turtle,
You motherfucking chinc lover, russian paid scumbag. With your fucking chinc father-in-law
bank rolling you. You fucking animal better get ready for the biggest loss of your shitty
heartless evil toxic life.
We know you will believe this is just unimportant bullshit, however you better not. </MSG>
</APP>

Ex. A4 (excerpted); *see* Ex. A11 at 3:11-3:20, 3:27-4:44, 4:50-5:17, 6:40-6:45.

**F.     The May 1, 2019 Interview (Ex. A10).**

In May 2019, defendant spoke to a law enforcement officer during a recorded interview about the April 9, 2019 email.  Ex. A10.  Defendant initially claimed that he was not familiar with this email, *id.* at 0:25-1:05, but then explained that he had chosen the phone number in the email by picking it at random, *id.* at 3:55-4:05.  He also described the background context for the email message, *id.* at 2:05-2:11, and the email address "TheResistancewillexecuterepubs@fahrenheit.com," *id.* at 2:50-3:17, during the interview.  The officer again suggested that defendant "be mindful."  *Id.* at 4:05-4:25.

**G.     The June 5, 2019 Email (Ex. A5).**

One month after the May 2019 interview, defendant used his cell phone and a fictitious Kentucky alias to send the email below to Senator McConnell:

> 6/5/2019 10:30:31 PM
>
> 73.162.224.166
>
> Brigadier General John Favreau
> 1801 Sulgrave Road
> Louisville, Kentucky 40205-1645 KY03
> 5023547790 (H)
> fuckyouturtlescum@fairfield.net
>
> Subject: Losers will die turtle,
>
> Go fuck yourself you fucking criminal motherfucker.
> In 2020, You are fucking a closed case. You are a fucking dog who will be put down!!! The Kentucky Resistance is going to hang you by your pussy lips and punish you for what you think you got away this. Your consequential decision will afford you the most torture you will ever endure. scalia was the biggest asshole in the judicial system ever.

Ex. A5; *see* Ex. A11 at 4:50-5:17, 6:40-6:45.  Defendant later admitted that he sent the email with harassing intent and without disclosing his identity.  Ex. A11 at 3:11-3:20, 3:27-4:44.

**H.     The June 19, 2019 Email (Ex. A6).**

On June 19, 2019, defendant used his cell phone to send Senator McConnell the email below:

Chief Master Sergeant Jedediah MacNamara
1801 Sulgrave Road
Louisville, Kentucky 40205-1645 KY03
502.875.9343 (H)
youfuckingchinklover@sinclair.com

Date: 6/19/2019 11:59:35 PM
Subject: The 2020 election
<IP>73.162.224.166</IP>
<ISSUE>OTHER</ISSUE>
<MSG>You racist fucking criminal chinc loving motherfucker.
You are going down in2020 and then you will suffer the consequences and they
will burn your life down!</MSG>

Ex. A6; *see* Ex. A11 at 4:50-5:17, 6:40-6:45.  He did so with intent to harass the Senator and without

revealing his identity.  Ex. A11 at 3:11-3:20, 3:27-4:44.  In this email, he used a fictitious Kentucky

alias and the same mailing address that he used in the June 5, 2019 email.  *Compare* Ex. A6 *to* Ex. A5.

**I.      The July 19, 2019 Email (Ex. A7).**

On July 19, 2019, defendant used his cell phone and a fictitious Kentucky alias to send the

following email to Senator McConnell with harassing intent:

Colonel Alfonso Fujimori
1801 Sulgrave Road
Louisville, Kentucky 40205-1645 KY03
502-577-9033 (H)
mcconnellufuckinggookfucker@hotmail.com

**Subject:** We need your chink whore to go back

"To where the fucking gook came from. You motherfucking racist scum. The Kentucky Resistance says they are
going to cut your throat from ear to ear and then your gook wife's."

Ex. A7; *see* Ex. A11 at 3:11-3:20, 3:27-4:44, 4:50-5:17, 6:40-6:45.  He did not reveal his true identity in

the email.  *See* Ex. A7.  Instead, he used a fictitious alias with the same mailing address – 1801 Sulgrave

Road in Louisville, Kentucky – that he used in the June 5 and 19, 2019 emails.  *Compare* Ex. A7 *to*

Exs. A5 and A6.  Defendant later told law enforcement officers that he adopted Kentucky personas to

ensure Senator McConnell would receive his emails, which he sent by cell phone with intent to harass

the Senator.  *See* Ex. A9 at 5:45-6:00; Ex. A10 at 3:55-4:05; Ex. A11 at 1:13-1:25, 3:11-3:27, 6:11-6:35.

**J.      The October 16, 2019 Email (Ex. A8).**

On October 16, 2019, defendant used his cell phone to send the following email to the Senator:

Ms. Orleetina Georgabara
17 Meadow Lane
Fort Thomas, Kentucky 41075-1032 KY04
859.244.7498 (H)
youareadeadmanasap@yahoo.com

Date: 10/16/2019 2:03:52 AM
Subject: The gravity of your nonexistence
<IP>73.162.224.166</IP>
<ISSUE>OTHER</ISSUE>
<MSG>Whether you believe or not, after watching Frontline the Kentucky Resistance is
going to totally execute you. They have stated youare a deadman! And soon.
We are so glad to hear that they are finally going to take action. We cannot wait to know you
are dead.</MSG>

Ex. A8; *see* Ex. A11 at 4:50-5:17, 6:40-6:45.  Again, defendant used a fictitious Kentucky alias and did not disclose his true identity.  *See* Ex. A8; Ex. A11 at 1:13-1:25, 6:11-6:35.  His intent in sending the email was to harass the Senator.  *See* Ex. A11 at 3:08-3:20.

**K.      The November 13, 2019 Interview (Ex. A11).**

On November 13, 2019, law enforcement officers went to defendant's residence to execute a search warrant.  Before entering his residence, officers conducted a recorded, non-custodial interview with defendant to discuss the eight emails that he sent to Senator McConnell.  *See* Ex. A11.

During the interview, defendant admitted that he used his cell phone to send the eight emails to Senator McConnell, and that he did so continuously as a form of harassment.  *Id.* at 3:08-3:20, 4:50-5:17, 5:39-6:04, 6:40-6:45.  Defendant agreed that he sent the emails with the intent to harass the Senator, rather than to threaten.  *Id.* at 3:08-3:20.  He stated that he decided to harass the Senator after the Senator made political decisions with which he disagreed.  *Id.* at 3:27-3:50, 5:39-6:04.

Defendant explained that he chose military aliases, such as "Airman Mitchell Valenti," *see* Ex. A2 (October 22, 2018 email), and "Chief Major Sergeant Jedediah MacNamara," *see* Ex. A6 (June 19, 2019 email), from a list of names online.  *Id.* at 6:11-6:24.  He used Kentucky aliases to ensure that Senator McConnell would receive the emails.  *Id.* at 1:13-1:25.

1    In addition, he clarified that he decided to use racial slurs in the emails in furtherance of his

2 intent to harass Senator McConnell.  *See id.* at 4:00-4:44.  Three of his emails had used racial slurs:

3 (1) the April 9, 2019 email referred to "[y]ou motherfucking chinc lover" and "your fucking chinc

4 father-in-law," Ex. A4; (2) the June 19, 2019 email was addressed to "[y]ou racist fucking criminal

5 chinc loving motherfucker," Ex. A6; and (3) the July 19, 2019 email was allegedly sent from the email

6 address "mcconnellufuckinggookfucker@hotmail.com" and contained references to "chink whore,"

7 "fucking gook," "[y]ou motherfucking racist scum," and "your gook wife[]," Ex. A7.  Defendant

8 described his use of the racist slurs as "just terrible harassment" and "just anger and bullshit," Ex. A11 at

9 4:00-4:27, which is consistent with his admissions that his intent was to harass Senator McConnell, *id.* at

10 3:08-3:20.  His purpose in using racial slurs was to cause a rise out of the Senator.  *Id.* at 4:27-4:44.

11    During the interview, defendant also admitted to sending all eight emails to Senator McConnell,

12 *id.* at 4:50-5:17, and that he wanted his emails to affect the Senator.  *Id.* at 5:39-6:04.

13 **III.    PROCEDURAL POSTURE**

14    On January 16, 2020, a grand jury returned a one count indictment charging defendant with the

15 harassing use of a telecommunications device in violation of 47 U.S.C. § 223(a)(1)(C).  Indictment.

16    On March 4, 2020, defendant filed a motion to dismiss the indictment.  Mot.

17 **IV.    ARGUMENT**

18    Defendant's challenges to § 223(a)(1)(C) lack merit and should be denied.  First, he lacks

19 standing to argue facial vagueness and, in any event, the statutory language is clear.  Second, the statute

20 is not facially overbroad because it targets conduct, not speech and, if it restricts protected speech, it

21 does not do so substantially.  Third, the as-applied challenge fails because defendant is charged with

22 unlawful conduct, not speech, and any incidentally burdened speech was integral to his criminal conduct

23 and thus unprotected by the First Amendment.  The motion to dismiss should be denied.

24    **A.    Defendant's conduct falls squarely within the scope of § 223(a)(1)(C), which
        prohibits the harassing use of a telecommunications device in certain circumstances.**

25

26    As a preliminary matter, the parties do not dispute that defendant's conduct falls within the scope

27 of the charging statute.  *See generally* Mot.

28

1    Section 223(a)(1)(C) prohibits a person from, in interstate or foreign communications, "mak[ing]

2    a telephone call or utiliz[ing] a telecommunications device, whether or not conversation or

3    communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any

4    specific person." § 223(a)(1)(C). The statute defines the term "telecommunications device" as

5    including "any device or software that can be used to originate telecommunications or other types of

6    communications that are transmitted, in whole or in part, by the Internet." 47 U.S.C. § 223(h)(1)(C).

7    The legislative intent was to protect people from threats, harassment, and other unjustifiable motives,

8    *see Bowker*, 372 F.3d at 379 (citing *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978)).

9    Here, defendant used his cell phone in California to send emails to Senator McConnell in

10   Washington, D.C. Defendant did so using fictitious aliases, without revealing his identity, and, as he

11   later admitted, with the purpose and intent to harass Senator McConnell. Thus, the conduct charged in

12   this case is clearly within the bounds of § 223(a)(1)(C).

13   **B.    The facial vagueness challenge fails because defendant lacks standing and because**
14   **the statute is clearly defined.**

15   Defendant cannot succeed on his facial challenge to § 223(a)(1)(C) as void-for-vagueness, both

16   for lack of standing and on the merits.

17   At the outset, because defendant's conduct falls squarely within the scope of § 223(a)(1)(C), he

18   has no vagueness standing because "[o]ne to whose conduct a statute clearly applies may not

19   successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974) (alteration in

20   original); *see also Planned Parenthood of Cent. & N. Ariz. v. Arizona*, 718 F.2d 938, 946 (9th Cir. 1983)

21   (citing *Parker*, 417 U.S. at 756 for the same principle). "[E]ven if the outermost boundaries" of a statute

22   "may be imprecise, any such uncertainty has little relevance here," where the charged conduct "falls

23   squarely within the hard core of the statute's proscriptions." *Broadrick v. Oklahoma*, 413 U.S. 601, 608

24   (1973) (internal quotation marks omitted). In addition, the intent requirement "thoroughly undermines"

25   any claim that defendant could not discern that his harassing conduct was proscribed by the statute.

26   *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014). Defendant has no standing to contest the

27   vagueness of § 223(a)(1)(C).

28

UNITED STATES' OPP. TO DEF.'S MOT. TO DISMISS
NO. CR 20-00013 CRB                    9

1    Nonetheless, even if he had standing, his facial challenge for vagueness would fail on the merits.

2    As the Sixth and Eleventh Circuits have held, the meanings of the words used in § 223(a)(1)(C) are

3    fairly clear and the statute is not unconstitutionally vague.  *See Eckhardt*, 466 F.3d at 944; *Bowker*, 372

4    F.3d at 380-83.

5    The vagueness doctrine has two related requirements.  First, the law must "give the person of

6    ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act

7    accordingly."  *Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019) (internal quotation marks

8    omitted).  The law must give "fair notice" of the prohibited conduct.  *Id.*  It must not chill or discourage

9    participation in protected speech through language "sufficiently murky that speakers will be compelled

10   to steer too far clear of any forbidden areas."  *Id.* (internal quotation marks and alterations omitted).

11   Second, to avoid "arbitrary and discriminatory enforcement," the law must "provide explicit standards

12   for those who apply them."  *Id.* at 665 (internal quotation marks omitted).

13   Section 223(a)(1)(C) complies with these directives, and the claim that the words "abuse,"

14   "threaten," and "harass" render it unconstitutionally vague is unsubstantiated.  *See* Mot. at 12-13.

15   First, the Ninth Circuit has already ruled on the constitutional clarity of the terms "threat" and

16   "harass" in analogous statutes.  In *Osinger*, the court held that the word "harass" is "not [an] esoteric or

17   complicated term[] devoid of common understanding" in rejecting a facial vagueness challenge to 18

18   U.S.C. § 2261(A)(2)(A), the anti-stalking statute.  *Osinger*, 753 F.3d at 945 (citing *Adams v. Ford Motor

19   Co.*, 653 F.3d 299, 307 (3d Cir. 2011), and Black's Law Dictionary).  In *United States v. Sutcliffe*, the

20   court declined to invalidate 18 U.S.C. § 875(c), which prohibits the transmission of threats but does not

21   define "threats," in part because "the narrowing construction provided by the relevant cases" on the true

22   threats doctrine "alleviates possible void-for-vagueness concerns."  505 F.3d 944, 953 (9th Cir. 2007)

23   (citing *Boos v. Barry*, 485 U.S. 312, 329-30 (1988), and referring to *Virginia v. Black*, 538 U.S. 343,

24   359-60 (2003)).

25   Second, Black's Law Dictionary defines the verb "abuse" as "[t]o damage (a thing);" "[t]o depart

26   from legal or reasonable use in dealing with (a person or thing); to misuse;" and "[t]o injure (a person)

27   physically or mentally."  Black's Law Dictionary, "Abuse" (11th ed. 2019).  Like the term "harass," the

28

term "abuse" carries common understanding and is not so esoteric or complicated as to make

§ 223(a)(1)(C) unconstitutionally vague.  Moreover, the statutory language in § 223(a)(1)(C) should be

read "in combination with terms that provide sufficient clarity," *Edge*, 929 F.3d at 665, and in light of

the legislative intent to protect individuals from threats, harassment, and other unjustifiable motives, *see*

*Bowker*, 372 F.3d at 382-83.  "This context suggests that the words . . . abuse, threaten or harass should

be read together to be given similar meanings" and, as a result, any vagueness stemming from the term

abuse "is mitigated by the fact that the meanings of threaten and harass can easily be ascertained and

have generally accepted meanings."  *Id.* at 383 (internal quotation marks omitted); *see also Eckhardt*,

466 F.3d at 944 (agreeing with *Bowker* that the meanings of words in § 223(a)(1)(C) can be "ascertained

fairly" and do not make statute impermissibly vague (internal quotation marks omitted)).

Third, because the meanings of the words "abuse," "threaten," and "harass" as used in

§ 223(a)(1)(C) are sufficiently clear, so is its statutory prohibition against making phone calls or using

telecommunication devices, without disclosing one's identity and with intent to abuse, threaten, or

harass a specific person.  A person of ordinary intelligence who read the statute would be adequately

informed of its proscriptions, have fair notice of the prohibited conduct, and be able to act accordingly.

*See Edge*, 929 F.3d at 664.  Section 233(a)(1)(C) contains no "murky" language that would cause people

to guess at its statutory meaning, compel them "to steer too far clear of any forbidden areas," or

discourage them from engaging in protected speech.  *See id.* at 664 (internal quotation marks and

alterations omitted).

Fourth, the readily discernable meaning of § 223(a)(1)(C) indicates that statutory enforcement

would not depend upon the subjective, arbitrary, or discriminatory assessments of an enforcing officer.

As discussed, the words in the statute carry common understandings and are not arcane.  The statute

provides sufficiently clear standards and enforcing officers need not "delve into subjective questions"

such as "what constitutes a religious, political, philosophical, or ideological message."  *Id.* at 667

(internal quotation marks omitted).  Contrary to defendant's suggestions, *see* Mot. at 12-13, "the mere

fact that close cases can be envisioned does not render an otherwise permissible statute

unconstitutionally vague," *Edge*, 929 F.3d at 666 (quoting *United States v. Williams,* 553 U.S. 285, 305

(2008)).  Indeed, "close cases are addressed 'not by doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.'"  *Id.* (quoting *Williams*, 553 U.S. at 306).

Defendant cannot prevail on his facial vagueness challenge because he lacks standing and because the statute is not impermissibly vague.  The motion to dismiss should be denied in this respect.

C. **Under the established principles of overbreadth, the statute is not overly broad because it targets conduct, not speech, and any restrictions on protected speech are not substantial, both in an absolute sense and in relation to the its legitimate sweep.**

Defendant's facial overbreadth challenge to § 223(a)(1)(C) falls short under the traditional principles of the overbreadth doctrine, as the Sixth and Eleventh Circuits have already held.  *See Eckhardt*, 466 F.3d at 943-44 (rejecting facial and as-applied overbreadth challenges to § 223(a)(1)(C)); *Bowker*, 372 F.3d at 378-80 (same).

He first argues that the Sixth Circuit's decision in *Bowker* and the Eleventh Circuit's decision in *Eckhardt* do not apply to this case because they did not specifically address Internet communications. Mot. at 10-11.  This argument is flawed.  The reach of the First Amendment is evaluated in the same manner regardless of whether the conduct involves online or offline communications.  *See Sutcliffe*, 505 F.3d at 953 (applying traditional First Amendment principles in online threats case).  As the Supreme Court held, "whatever the challenges of applying the Constitution to ever-advancing technology, the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary when a new and different medium for communication appears."  *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (internal quotation marks omitted).  Moreover, neither the *Bowker* nor the *Eckhardt* decision limited its reasoning to conduct involving offline communications, and their substantive analyses are readily applicable to conduct involving online communications as well.[1]

---

[1] In *Bowker*, the Sixth Circuit upheld § 223(a)(1)(C), which prohibited "abusive, threatening or harassing communications" in addition to "simply annoying telephonic communications," and concluded the statute was not facially overbroad because it, unlike the city ordinance in *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), implicated a "far more circumscribed" domain of speech in which listeners typically were singled out by calls, received calls directly rather than through a public forum, had to go through more inconvenience to avoid calls such as changing numbers or screening calls, and could not readily identify callers, which made callers harder to confront and more likely to instill fear.  *Bowker*, 372 F.3d at 379.  These aspects, paired with the observation that "[w]hatever overbreadth exists in the statute can be cured on a case-by-case basis," led the Sixth Circuit to reject the facial overbreadth challenge to § 223(a)(1)(C).  *Id.* at 379-80 (internal quotation marks omitted).

The traditional principles of the overbreadth doctrine therefore apply. "[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks omitted); *see Bowker*, 372 F.3d at 378 (setting forth same rule). The defendant has the burden of showing substantial overbreadth "from the text of the law and from actual fact." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (internal quotation marks and alterations omitted).

The purpose of the overbreadth doctrine is to prevent restrictions on unprotected speech from chilling protected speech, a concern that "attenuates as the otherwise unprotected behavior . . . moves from pure speech toward conduct." *Id.* at 124 (internal quotation marks omitted). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Id.* Invalidating a statute through "the strong medicine of overbreadth" is disfavored, as overbroad applications of the statute can be remedied by other means, including through as-applied litigation. *Id.* (internal quotation marks omitted); *see United States v. Morrison*, 529 U.S. 598, 607 (2000) (presuming constitutionality of statute); c*f. Hicks*, 539 U.S. at 119 (precluding overbreadth invalidation if the First Amendment violation can instead be cured by a limiting construction or partial invalidation of the statute).

To assess for overbreadth, the first step is to interpret the statutory scope of the statute and to determine whether the statute restricts speech. *United States v. Sineng-Smith*, 910 F.3d 461, 471 (9th Cir. 2018). If it does, the second step is to assess whether the restricted speech is protected. *Id.* If so, then the third step is to analyze whether the restriction on protected speech is substantial, both in an absolute sense and when weighed against the statute's legitimate scope, *id.*; *Williams,* 553 U.S. at 292. The overarching consideration is whether "the statute's improper applications" are "too numerous to allow the statute to stand," *Sineng-Smith*, 910 F.3d at 483.

---

Likewise, the Eleventh Circuit in *Eckhardt* analyzed the "identical" facial overbreadth challenge, agreed with the *Bowker* court, and upheld § 223(a)(1)(C) on the same grounds. *Eckhardt*, 466 F.3d at 943-44.

Thus, the substantive reasoning in these decisions is not limited to conduct involving offline communications, pertains to conduct involving online communications, and applies in this case too.

Applying this three step test to § 223(a)(1)(C) establishes that the statute is not unconstitutionally overbroad. First, § 223(a)(1)(C) prohibits the *making* of a phone call and *use* of a telecommunications device; without disclosing the user's identity; with intent to abuse, threaten, or harass any specific person; and in explicit disregard for whether any conversation or communication occurred, that is, regardless of whether the user sought to engage in speech of any kind. § 223(a)(1)(C). The purpose of the statute is to protect individuals from "abusive, threatening or harassing communications" that are "intended to instill fear in the victim." *Bowker*, 372 F.3d at 379 (quoting *Lampley*, 573 F.2d at 787). Neither the basis for criminalization, *i.e.*, the making of a phone call or use of a telecommunications device, nor the statutory purpose, *i.e.*, protecting individuals from abuse, threats, and harassment, implicates First Amendment protections, and thus the statute regulates the user's non-expressive conduct rather than his or her speech. *See Hicks*, 539 U.S. at 123 (employing similar reasoning as one basis to reject facial overbreadth challenge to anti-trespassing law). Moreover, the statutory requirement of an intent to abuse, threaten, or harass "mitigates any concern that he may [be] punished for merely having a communication." *Bowker*, 372 F.3d at 383 (reaching conclusion in context of vagueness analysis).

In other words, § 223(a)(1)(C) regulates conduct, not speech, and this conclusion should end the overbreadth analysis. *Sineng-Smith*, 910 F.3d at 471.

Second, even if the statute incidentally restricts speech, that speech is unprotected by the First Amendment for the reasons set forth in the as-applied section below. Any concern that § 223(a)(1) chills protected speech is attenuated because the statute does not regulate speech or conduct necessarily associated with speech. *See Hicks*, 539 U.S. at 124. Defendant's facial challenge to § 223(a)(1)(C) fails to pass the second step of the overbreadth analysis, and his facial overbreadth challenge should be denied. *See id.* (disfavoring statutory invalidation by "the strong medicine of overbreadth").

Third, even if § 223(a)(1)(C) reaches protected speech, it does not do so in substantial part. There are several legitimate applications of the statute, and the number of improper restrictions on protected speech are not substantial in an absolute sense or in comparison to the many legitimate applications. *See Williams,* 553 U.S. at 292.

Section 223(a)(1)(C) can be legitimately applied in several contexts, all of which are cabined by its elements:  (1) the making of a phone call or use of a telecommunications device; (2) without disclosing the user's identity; and (3) with intent to abuse, threaten, or harass.  § 223(a)(1)(C).  Because the statute defines "telecommunications device" broadly and as expressly including devices and software that can originate Internet communications, the first requirement extends the statutory scope to the use of several kinds of devices including landline phones, pagers, fax machines, email programs, instant messaging programs, advertising platforms, Voice Over IP (VOIP) phone systems, web cameras, video chat programs, and, as relevant here, cell phones.  *See* § 223(h)(1)(C).

The second requirement of non-disclosure limits the statutory scope to the use of these devices when the device user does not disclose his or identity, such as by using a fictitious alias, referring to himself or herself anonymously, or omitting references to identity altogether.  *See* § 223(a)(1)(C).  This element prevents § 223(a)(1)(C) from reaching the use of a device involving, for example, messages that identify the sender in the message text; emails sent from an email account that identifies the sender in the address; and social media posts that either contain identifying information themselves or are posted from a social media account with an identifying user name, profile photo or description, linked email address or external website that identifies the sender, or past or future social media posts that identify the sender through the message text, embedded picture or video, retweeted message, or other means.

The third requirement of intent imposes a further restriction on the prohibitive scope to instances in which the person uses the device with intent to abuse, threaten, or harass a specific person.  *See id.*  This criterion precludes § 223(a)(1)(C) from prohibiting the use of a device with intent to target an abstract entity, religious organization, political party, company, government agency, or group of people.  The statute is thus broad, because it encompasses many legitimate applications, but not overly so, because these three requirements limit the scope of its prohibition.

There are several examples of legitimate applications of § 223(a)(1)(C).  For instance, as the Sixth and Eleventh Circuits have held, § 223(a)(1)(C) legitimately prohibits the intentional harassment of a reporter through repeated phone calls while using a caller identification blocking feature, *Bowker,*

1  372 F.3d at 374-75, 378-83, and the placement of "sexually laced" calls with the purpose of harassing

2  and frightening an office worker, *Eckhardt*, 466 F.3d at 944.

3      The statute would also be legitimately applied to these examples of unprotected speech and

4  conduct: (1) repeatedly calling a government agency, without identifying himself or herself, to scream

5  and launch obscenities at a secretary, *see United States v. Waggy*, 936 F.3d 1014, 1017, 1020  (9th

6  Cir. 2019) (rejecting First Amendment challenges to analogous Washington state statute);

7  (2) impersonating an ex-girlfriend online and posting fake advertisements and social media profiles

8  under her name to solicit sexual encounters, *see United States v. Sayer*, 748 F.3d 425, 433-46 (1st

9  Cir. 2014) (upholding anti-stalking statute § 2261(A)(2)(A) against as-applied First Amendment

10  challenge); (3) anonymously faxing unwanted, full pages of black ink to a victim's fax machine;

11  (4) emailing a computer virus or spam mail to a victim without disclosing the sender's identity to harass

12  the victim; (5) placing anonymous phone or video calls to a victim for the purpose of conveying threats

13  to kill or injure that person; and, the government submits, (6) the facts of the instant case, involving the

14  continuous sending of emails, under fictitious aliases hand-picked to ensure delivery to the victim, with

15  racial slurs deliberately selected to enhance the harassing effect, and with the express intent to harass the

16  victim, despite being warned on two prior occasions to be mindful of how such emails might be

17  perceived.  Thus, there are many legitimate applications of § 223(a)(1)(C).

18      On the other hand, there are substantially fewer illegitimate applications of § 223(a)(1)(C),

19  which is the result of the three statutory elements narrowing its statutory scope.  The fact patterns that

20  defendant identifies as examples of statutory overbreadth – the anonymized use of political parody

21  accounts, the posting of "anonymous disparaging statements about celebrities and public figures who

22  may be entirely unaware of the comments," and the anonymous participation in debates about issues of

23  public and private concern, Mot. 12, 13, 14 – would not fall within the bounds of § 223(a)(1)(C) unless

24  the device user also engaged in these activities with the intent to abuse, threaten, or harass a specific

25  person.  *See* § 223(a)(1)(C).

26      Because the statutory elements of § 223(a)(1)(C) minimize the number of illegitimate statutory

27  applications, any improper restrictions on protected speech are not substantial.    Put another way,

28

UNITED STATES' OPP. TO DEF.'S MOT. TO DISMISS
NO. CR 20-00013 CRB                    16

1   § 223(a)(1)(C) broadly applies in many legitimate contexts, but it is not overly broad because its

2   illegitimate applications are, in absolute and relative terms, insubstantial.

3          Any allegation that the statute reaches borderline, outlier, or truly illegitimate cases can be

4   addressed through as-applied challenges on a case-by-case basis, that is, without facially invalidating the

5   statute.  *See Hicks*, 539 U.S. at 124 (disfavoring facial invalidation through "the strong medicine of

6   overbreadth"); *Bowker*, 372 F.3d at 380 ("[T]he fact that application of the telephone harassment statute

7   may be unconstitutional in certain instances does not warrant facial invalidation.  Whatever overbreadth

8   exists in the statute can be cured on a case-by-case basis." (internal citations and quotation marks

9   omitted)).  Furthermore, the mere fact that § 223(a)(1)(C) could be applied to conduct involving online

10  communications does not change this analysis.  *See Brown*, 564 U.S. at 790 (holding that First

11  Amendment principles "do not vary when a new and different medium for communication appears").

12         Section 223(a)(1)(C) is not facially overbroad.  The statute targets conduct, not speech, and any

13  improper restrictions on protected speech are insubstantial.  Defendant has not met his burden of

14  establishing facial overbreadth and his motion to dismiss should be denied.

15         **D.     As to the as-applied challenge, the charged conduct is not protected by the First
16                 Amendment because it consists of conduct, not speech, and any incidentally
                 burdened speech is speech integral to criminal conduct.**

17         Defendant's as-applied challenge fails because his use of a cell phone under the facts of the

18  instant case is not subject to First Amendment protection.

19         The First Amendment right to free speech "is not absolute."  *Waggy*, 936 F.3d at 1017 (quoting

20  *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).  Laws that restrict speech can be valid if they (1) target

21  conduct and only incidentally burden speech, *id.* (citing *Hicks*, 539 at 123-24), or (2) restrict speech in a

22  narrow, traditionally recognized category of speech such as obscenity, defamation, fraud, incitement,

23  fighting words, child pornography, true threats, and, most pertinent here, speech integral to criminal

24  conduct, *id.* (citing *Stevens*, 559 U.S. at 468); *United States v. Alvarez*, 567 U.S. 709, 717 (2012).

25         The § 223(a)(1)(C) violation in this case readily qualifies under the first category of statutory

26  validity.  As discussed, neither the statutory basis for criminalization nor the statutory purpose implicate

27  First Amendment protections, *see Hicks*, 539 U.S. at 123, and the statutory prohibition applies to

28

defendant whether or not he sought to engage in protected speech, *see* § 223(a)(1)(C) (expressly

disregarding "whether or not conversation or communication ensues"); *Hicks*, 539 U.S. at 123. Thus,

§ 223(a)(1)(C) regulates defendant's speech, not his conduct, and, to the extent it restricts his speech at

all, it does so incidentally in the course of regulating his conduct, *see Hicks*, 539 U.S. at 123. The

statute is therefore validly applied in this case as a law that targets conduct and only incidentally burdens

speech. *Waggy*, 936 F.3d at 1017.

Second, § 223(a)(1)(C) is validly applied to the facts in this case because, if the statute restricts

defendant's speech at all, the burdened speech is "speech integral to criminal conduct" and unprotected

by the First Amendment. *Id.* Speech is integral to criminal conduct if it "constitute[s] the means of

carrying out" the criminal offense, *Osinger*, 753 F.3d at 947 (internal quotation marks omitted), because

the First Amendment is "not implicated" where the criminal conduct "involves far more than mere

advocacy" or other speech, *id.* (quoting *United States v. Meredith*, 685 F.3d 814, 819, 823 (9th

Cir. 2012)). "'[S]peech or writing used as an integral part of conduct in violation of a valid criminal

statute' does not enjoy First Amendment protection." *Sineng-Smith*, 910 F.3d at 480 (quoting *Giboney

v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)).

Here, any speech of defendant's that is restricted by § 223(a)(1)(C) is integral to his criminal

conduct in violating § 223(a)(1)(C). The only plausible "speech" component to his use of the cell phone

to email Senator McConnell, without disclosing his identity and with harassing intent, is his use of

fictitious Kentucky aliases in the emails to disguise his true identity and to ensure his emails would

reach the Senator. His inclusions of the fictitious aliases, to the extent they are considered speech at all,

are integral to his criminal conduct because they are part of the means of violating § 223(a)(1)(C), which

requires as an element the non-disclosure of identity. *See* § 223(a)(1)(C); *Osinger*, 753 F.3d at 947.[2]

And the non-disclosure of identity is not the only statutory element; the statute also requires the use of a

telecommunications device and the intent to harass a specific person, that is, far more than the mere

---

[2] In *United States v. Popa*, the D.C. Circuit evaluated an as-applied challenge to § 223(a)(1)(C) and noted,
in *dicta*, that the non-disclosure requirement may suggest that the statute imposed a content-based restriction on
speech. 187 F.3d 672, 675-76 (D.C. Cir. 1999). The *Popa* court later declined to rule on the issue and vacated
the conviction on other grounds. *Id.*

"speech" implicated by defendant's use of fictitious aliases.  *See* § 223(a)(1)(C); *Osinger*, 753 F.3d at 947; *see also Waggy*, 936 F.3d at 1020 (collecting federal and state appellate cases that rejected First Amendment challenges to telephone harassment statutes based on "[t]he requirement of a specific intent to harass").  In other words, if § 223(a)(1)(C) burdens speech at all, the speech is integral to criminal conduct and not subject to First Amendment protection.  *See Osinger*, 753 F.3d at 947.  As a result, the application of § 223(a)(1)(C) to defendant's conduct does not offend the First Amendment.

The Ninth Circuit reached similar conclusions in upholding a telephone harassment conviction under the neighboring subsection of 47 U.S.C. § 223(a)(1)(D), which prohibits a person from making or causing another person's phone to ring repeatedly or continuously, with the intent to harass a person at the called number.  *United States v. Sandhu*, 740 F. App'x 595, 596 (9th Cir. 2018) (unpublished mem.); 47 U.S.C. § 223(a)(1)(D).  In *Sandhu*, the Ninth Circuit affirmed a conviction under § 223(a)(1)(D) and rejected an as-applied challenge by finding, after a brief analysis, that the statute regulated conduct, not speech, and that "[a]ny expressive aspects of Sandhu's conduct were 'integral to criminal conduct' and thus not protected under the First Amendment." *Id.* (citing *Osinger*, 753 F.3d at 947).  The same analysis applies here.  Defendant's as-applied challenge fails because § 223(a)(1)(C) regulates his conduct, not his speech.  Any incidentally speech was integral to his criminal conduct and not subject to First Amendment protections.

Contrary to defendant's assertions, the D.C. Circuit's decision in *United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999), does not change this analysis.  *See* Mot. at 6-7.  The facts of the *Popa* case involved the defendant's placement of seven phone calls to the U.S. attorney with "complaints about the actions of a government official" as "a significant component of his calls."  *Popa*, 187 F.3d at 673, 677.  Instead of addressing whether § 223(a)(1)(C) was a law that targeted conduct and only incidentally burdened speech, or whether the charged conduct fell under the First Amendment exception of speech integral to criminal conduct, the D.C. Circuit applied intermediate scrutiny to § 223(a)(1)(C), concluded it was not narrowly tailored as applied to the *Popa* defendant's conduct, and invalidated the defendant's conviction on that ground.  *Id.* at 675-78.

Here, in contrast, this Court should instead follow the principle articulated by the Supreme Court

1    in the *Alvarez* decision and by the Ninth Circuit:  Even if § 223(a)(1)(C) places a content-based

2    restriction on speech, the restriction is permissible if the restricted speech falls under one of the "few

3    historic and traditional categories [of expression] long familiar to the bar," which includes "speech

4    integral to criminal conduct."  *Alvarez*, 567 U.S. at 717 (internal quotation marks omitted) (alterations in

5    original); *see, e.g., Sineng-Smith*, 910 F.3d at 481 ("[S]peech or writing used as an integral part of

6    conduct in violation of a valid criminal statute does not enjoy First Amendment protection." (internal

7    quotation marks omitted) (alterations in original)); *Meredith*, 685 F.3d at 819, 820 (holding that the

8    Supreme Court "has carved out some limited categories of unprotected speech, including . . . speech

9    integral to criminal conduct" and has "reject[ed] the contention that the constitutional freedom for

10   speech and press extends its immunity to speech or writing used as an integral part of conduct in

11   violation of a valid criminal statute" (internal quotation marks omitted)).

12          In this case, the determination that any restricted speech of defendant's would be speech integral

13   to criminal conduct ends the First Amendment analysis, and there is no need to apply other tests to

14   determine whether there is a constitutional violation.  *See Alvarez*, 567 U.S. at 717; *Sineng-Smith*, 910

15   F.3d at 481; *Meredith*, 685 F.3d at 819, 820.  The *Popa* decision has no bearing here because it did not

16   address the speech integral to criminal conduct exception.  *See Popa*, 187 F.3d at 675-78.

17          Furthermore, that defendant directed his use of a cell phone at Senator McConnell does not alter

18   this conclusion; the references to the Senator are significant in this case only as evidence of defendant's

19   harassing intent – that is, only as evidence of a required element of § 223(a)(1)(C).  As discussed,

20   defendant admitted that his intent in sending the emails was to harass Senator McConnell. Ex. A11 at

21   3:11-3:20.  In fact, defendant deliberately used fictitious Kentucky aliases to ensure the communications

22   would reach the Senator, *id.* at 1:13-1:25, and included racial slurs in the emails to cause "terrible

23   harassment" and to get a rise out of the Senator, *id.* at 4:00-4:44.  Defendant continued sending emails to

24   the Senator in this manner even after a law enforcement officer told him, on two separate occasions, to

25   "be mindful" of how his emails could be perceived.  Ex. A9 at 6:15-6:45; Ex. A10 at 4:05-4:25.  Thus,

26   the references to Senator McConnell are simply direct and circumstantial evidence of defendant's intent

27   to harass a specific person, which satisfies the intent requirement under § 223(a)(1)(C).

28

This evidence of his harassing intent defeats any suggestion that he used his cell phone merely to share his opinion with or to criticize the Senator.  *See* Mot. at 3; *Waggy*, 936 F.3d at 1019 (holding, in analysis of analogous Washington state statute, that the fact "[t]hat Defendant included some criticism of the government does not necessarily imbue his conduct with First Amendment protection," and "reject[ing] Defendant's argument that he was merely criticizing a government official" given "the jury's finding that Defendant intended to harass Payne").  Any allegation that defendant used his cell phone with intent to convey his political opinion would misconstrue the evidence in this case and either (1) improperly conflate defendant's basis (political disagreement) for forming the harassing intent with the intent (to harass) itself, or (2) confuse a possible secondary result of his criminal conduct (political feedback) with an element of the criminal conduct (intent to harass).

In sum, § 223(a)(1)(C) regulates conduct and not speech.  To the extent the statute incidentally burdened defendant's speech while prohibiting his harassing use of a cell phone, the speech was integral to criminal conduct and not subject to First Amendment protection.  Speech integral to criminal conduct falls within a "well-defined and narrowly limited class[] of speech, the prevention and punishment of which ha[s] never been thought to raise any Constitutional problem."  *Stevens*, 559 U.S. at 468-69.  There is thus no need to apply any scrutiny, strict or otherwise, to the § 223(a)(1)(C) violation in this case.  Defendant cannot prevail on the as-applied challenge, and the motion to dismiss should be denied.

## V.   CONCLUSION

Defendant's facial vagueness, facial overbreadth, and as-applied challenges are without merit and the Court should deny his motion to dismiss in its entirety.

DATED: April 1, 2020                                        Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

/s/ *Christina Liu*
_____
CHRISTINA LIU
Assistant United States Attorney