STEVEN G. KALAR
Federal Public Defender
Northern District of California
ANGELA CHUANG
Assistant Federal Public Defender
AMY SENIA
Special Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Angela_Chuang@fd.org

Counsel for Defendant Weiss

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD WEISS,<br><br>Defendant. | **Case No.:** CR 20–13 CRB<br><br>**REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ON FIRST AMENDMENT GROUNDS**<br><br>**Court:**  Courtroom 6, 17th Floor<br>**Hearing Date:**  June 24, 2020<br>**Hearing Time:**  1:30 p.m. |

## INTRODUCTION

The government indicted Mr. Weiss for sending eight politically charged messages to Senator Mitch McConnell through the contact form on McConnell's public website over the course of one year. As the censor, the government bears the burden of demonstrating its prosecution comports with the First Amendment. The government's sole justification—the categorical speech integral to criminal conduct exception—relies upon circular reasoning, gravely deviates from established First Amendment doctrine, and does not apply to the facts here. Additionally, the statute is

unconstitutionally vague and overbroad because it leaves people of ordinary intelligence, law enforcement, and juries alike to make wholly subjective judgments about someone's motivations for speaking. The government utterly fails to identify how the statute's coverage is sufficiently narrow. Because this prosecution impermissibly infringes on Mr. Weiss's core First Amendment right to engage in political speech criticizing a public figure, the Court must dismiss the Indictment.

**ARGUMENT**

**I.    The Government Failed to Meet its Burden to Prove that the First Amendment Permits this Speech-Based Prosecution.**

**A.    The government uses the wrong standard for assessing laws that burden speech.**

The government argues its prosecution of Mr. Weiss withstands a First Amendment challenge because "to the extent it restricts his speech at all, it does so incidentally in the course of regulating his conduct." Gov't Opp. at 18. This conclusory statement fails to provide the Court with the proper constitutional test; determining whether a law regulates conduct and only incidentally burdens speech is the first step in the analysis, not the last. Only if a court concludes that a statute merely burdens speech incidentally, does the court proceed to the next step of determining whether the government has proven its prosecution "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Holder v. Humanitarian Law Project ("HLP")*, 561 U.S. 1, 26-28 ("intermediate scrutiny"). Even if § 223(a)(1)(C) *generally* regulates conduct in addition to speech, the Court must still apply strict scrutiny here, because Mr. Weiss's "conduct triggering coverage under the statute consists of communicating a message." *Id.* at 27-28 (as applied to plaintiffs, law generally banning "conduct" of providing material support to terrorists received strict scrutiny because plaintiffs' only "conduct" was a communication, providing support in the form of training and advice).

The government cannot avoid the proper standard of scrutiny by relabeling speech as conduct. Had Mr. Weiss sent eight messages to Senator McConnell through his public website with supportive, admiring statements, he would not have been indicted. Instead, Mr. Weiss faces prosecution "because of what his speech communicated," 561 U.S. at 28, and thus, strict scrutiny applies. Here, the government failed to meet its burden to prove its prosecution passes strict scrutiny.

**B.     Mr. Weiss's speech does not fall under the narrow "speech integral to criminal conduct" exception, as no independent criminal conduct occurred.**

The government relies on a "controversial" and "unsettled" categorical exception to the First Amendment: speech integral to criminal conduct. *United States v. Osinger*, 753 F. 939, 950 (9th Cir. 2014) (Watford, J., concurring). Specifically, the government argues that "any speech of defendant's that is restricted by § 223(a)(1)(C) is integral to his criminal conduct in violating § 223(a)(1)(C)." Gov't Opp. at 18. If accepted, this circular reasoning would eviscerate the First Amendment.

The government cites *United States v. Alvarez*, 567 U.S. 709 (2012), for the speech integral to criminal conduct exception; significantly, the Supreme Court did not utilize that exception in *Alvarez* and instead applied strict scrutiny. *See* Gov't Opp. at 20. Alvarez was indicted under the Stolen Valor Act for lying about having received the Congressional Medal of Honor. 567 U.S. 709 at 714. Applying the government's reasoning would have made *Alvarez* an easy case, concluding that because Alvarez' false claim was integral to his violation of the Stolen Valor Act, his speech was categorically unprotected under the First Amendment. But *Alvarez* did not apply the speech integral to criminal conduct exception. Doing so would have allowed the exception to swallow the First Amendment. Never again would courts need to analyze whether a criminal statute infringing on speech passes intermediate or strict scrutiny—they could merely hold that the speech has been criminalized, apply the exception, and be done with it. *See United States v. Matusiewicz*, 84 F. Supp. 3d 363, 369 (D. Del. 2015) ("[I]f the government criminalized any type of speech, then anyone engaging in that speech could be punished because the speech would automatically be integral to committing the offense. That interpretation would clearly be inconsistent with the First Amendment . . ."); *see also* Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 987 (2016) (the exception "can't justify treating speech as 'integral to illegal conduct' simply because the speech is illegal under the law that is being challenged. **That should be obvious, since the whole point of modern First Amendment doctrine is to protect speech against many laws that make such speech illegal.**") (emphasis added). The government's opposition forgets this basic tenet: The First Amendment limits Congress; Congress does not limit the First Amendment.

In reality, the speech integral to criminal conduct exception applies only in a narrow set of circumstances in which a defendant's speech "is a mechanism or instrumentality in the commission

1    of a separate unlawful act," apart from the speech itself. *People v. Relerford*, 104 N.E.3d 341, 352 (Il

2    2017) (citing *United States v. Stevens*, 559 U.S. 460, 471 (2010)); *see, e.g.*, *United States v. Meredith*,

3    685 F.2d 814, 820 (9th Cir. 2012) (defendants' speech explaining how to avoid taxes was integral to

4    their conspiracy to defraud the United States); *United States v. Petrovic*, 701 F.3d 849, 855 (8th Cir.

5    2012) (defendant's website with sexually explicit images of a former sexual partner was integral to

6    extortion and stalking); *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) (defendant's fake

7    Facebook impersonation and posting of sexually explicit photos of ex-partner was integral to his

8    stalking offense, which began with in-person stalking conduct prior to his online speech).

9         The Court cannot accept the government's claim that "the *Popa* decision has no bearing here

10   because it did not address the speech integral to criminal conduct exception." Gov't Opp. at 20.  The

11   *Popa* court did not rely on the speech integral to criminal conduct exception because Popa committed

12   no criminal conduct independent of his alleged violation of the statute with pure speech. 187 F.3d

13   672, 676 (D.C. Cir. 1999). That is, Popa's conviction was based solely on his seven phone calls to

14   Eric Holder's office, in which he made offensive political comments, including that Mr. Holder was

15   "a criminal, a negro," a "criminal with cold blood," "violating the rights in court of the white people,"

16   and a "whore, born by a negro whore." 187 F.3d 672, 673. When a defendant violates a criminal

17   statute by "doing nothing but exercising a right of free speech, the exception for speech integral to

18   criminal conduct shouldn't apply." *Osinger*, 753 F.3d 939, 954 (Watford, J., concurring). Like *Popa*,

19   this case involves no criminal act or conduct separate from Mr. Weiss's alleged violation of the

20   statute by engaging in pure political speech. Crucially, the only non-speech "conduct" that Mr. Weiss

21   is accused of here is using an Internet-accessible cell phone—if that were considered independent

22   criminal conduct sufficient to trigger the exception relied upon by the government, that would turn

23   essentially every American into a criminal. Thus, the government cannot justify its prosecution by

24   relying on the speech integral to criminal conduct exception to the First Amendment.[1]

25   _____

26   [1] The statute at issue in *United States v. Sandhu*, 740 F. App'x 595, 596 (9th Cir. 2018) (unpublished
     mem.)*,* prohibited "causing another person's phone to ring repeatedly or continuously," requiring

27   proof that the defendant engaged in conduct separate and apart from any speech. *See Osinger*, 753
     F.3d at 954 (Watford, J., concurring) (distinguishing the criminalization of pure speech from cases in

28   which "non-communicative aspects of speech, like repeated, unwanted telephone calls [] are
     harassing due to their sheer number and frequency"). The government cannot analogize a conviction

C.   **The government erroneously assumes that political speech made with the intent to harass a public figure is constitutionally proscribable.**

Notably, the government does not contest the political content of Mr. Weiss's messages or that Senator McConnell is a well-known political figure. *See* Gov't Opp. at 17-21. Instead, the government disagrees with the significance of those facts, claiming that "the references to Senator McConnell are simply direct and circumstantial evidence of defendant's intent to harass a specific person . . ." Gov't Opp. at 20. This argument assumes—without support from any authority—that subjective mal intent alone can transform pure speech into constitutionally unprotected speech. Proof of a subjective "intent to harass," while necessary to be convicted of § 223(a)(1)(C), does not automatically render a prosecution under that statute compliant with the First Amendment. To the contrary, "the right to provoke, offend, and shock lies at the core of the First Amendment." *Rodriguez v. Maricopa Cty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2010). There is no categorical exception to the First Amendment for speech made with the subjective intent to harass or offend someone. *Id.*; *see also*, *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 468 (2007) ("[A] speaker's motivation is entirely irrelevant to the question of constitutional protection."); *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964) (holding that even when a speaker is motivated by hatred or ill will, the First Amendment protects his expression); *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (reversing jury verdict finding Westboro Baptist Church liable for intentional infliction of emotional distress for picketing soldier's funeral with signs including, "Thank God for Dead Soldiers" and "You're Going to Hell"); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53 (1988) (reversing jury verdict finding Hustler Magazine liable for intentional infliction of emotional distress for publishing sexual parody of well-known religious figure, holding though "a bad motive may be deemed controlling for purposes of tort liability in other areas of the law, we think the First Amendment prohibits such a result in the area of public debate about public figures").

Moreover, the government ignores the fact that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v.*

for harassing someone through repeated and continuous telephone ringing with Mr. Weiss's "conduct" here: sending eight Internet messages over the course of a year.

*Phelps*, 562 U.S. 443, 452 (2011). For example, the Ninth Circuit in *Osinger* distinguished the defendant's speech revealing a victim's private sexual conduct from the defendant's speech in *United States v. Cassidy*, 814 F. Supp. 2d 574 (D.Md 2011), attacking a public figure. *Osinger*, 753 F.3d at 948, n. 6. The government indicted Cassidy for launching an Internet campaign to harass a well-known religious figure by creating Twitter profiles to direct thousands of disparaging messages to him. 814 F. Supp. 2d at 579, 588. Though Cassidy's speech "inflicted substantial emotional distress," the court dismissed the indictment because it "was directed squarely at protected speech: anonymous, uncomfortable Internet speech addressing religious matters." *Osinger*, 753 F.3d at n. 6.

Mr. Weiss's "anonymous, uncomfortable Internet speech addressing" political matters receives exactly the "special protection" under the First Amendment that the Supreme Court mandates. Mr. Weiss sent eight messages to Senator McConnell in his official capacity as an elected representative of the United States government. Mr. Weiss did not send messages to McConnell's personal email account, nor did he make numerous phone calls to a personal, or even an office phone. Rather, he used the contact form on Senator McConnell's website, which actively invites the public to share their thoughts. *See* Def. Opening Mot., Ex. A ("I welcome your thoughts and concerns and would like to encourage you to share them with me."). The government cannot prosecute Mr. Weiss for using the public contact form that Senator McConnell created simply because Mr. Weiss shared critical thoughts, and only did so eight times over the course of a year. Mr. Weiss's messages were "complaints about the actions of a government official." *Popa*, 187 F.3d at 677; *see* Def. Opening Mot. at 8 ("you single-handedly are killing America," "you are going to lose the next election," "you are a criminal Russian asset," "you are going down in 2020"). The context of Mr. Weiss's speech (sent to Senator McConnell using his official public website), paired with its political content undoubtedly render it "speech on a matter of public concern," receiving full First Amendment protection. *Snyder*, 562 U.S. at 455.[2] Mr. Weiss's use of racial slurs, while in bad taste, do not change this analysis, as "the arguably inappropriate or controversial character of a statement is

---

[2] The government's citation to *United States v. Waggy*, 936 F.3d 1014, 1018-19 (9th Cir. 2019) does not impact this analysis, as Waggy's repeated phone calls did not target a public figure or largely involve issues of public concern, nor did it involve electronic submissions on an internet form that requested comments. *See id.* (distinguishing *Popa*, 187 F.3d 672).

1    irrelevant to the question whether it deals with a matter of public concern." *Snyder*, 562 U.S. at 453

2    (internal quotations omitted); *see also id*. at 458 ("The point of all speech protection . . . is to shield

3    just those choices of content that in someone's eyes are misguided, or even hurtful."). Thus, even if

4    the government could prove Mr. Weiss had the subjective intent to harass Senator McConnell, such

5    evidence would not remove his speech from the "special protection" of the First Amendment.

6    **II.    The Government Failed to Demonstrate the Statute's Facial Constitutionality.**

7        **A.    The statute's undefined terms and lack of narrowing context render it impermissibly vague.**

8
9        Criminal liability for Internet speech under § 223(a)(1)(C) hinges on a speaker's subjective

10   intent to "abuse, threaten or harass" a specific person "without disclosing his identity." Yet, the

11   statute provides no definitions or narrowing context for these two phrases, leaving people of ordinary

12   intelligence, law enforcement, prosecutors, and juries alike to make "wholly subjective judgments"

13   about someone's motivations for speaking. *See United States v. Williams*, 553 U.S. 285, 306 (2008)

14   (statutes which require "wholly subjective judgments without statutory definitions, narrowing

15   context, or settled legal meanings" are vague). The First Amendment does not permit statutes to

16   "leave wide open the standard of responsibility" such that it "effectively licenses the jury to create its

17   own standard in each case." *Gooding v. Wilson*, 405 U.S. 518, 528 (1972).

18       For the undefined terms "abuse, "threaten," and "harass," the government attempts to rely on

19   narrowing context that the Ninth Circuit relied upon in other, far more detailed statutes than §

20   223(a)(1)(C). Gov't Opp. at 10.[3] Although the statute in *Osinger* did not define "intent to harass," it

21   also required proof of a "course of conduct" that "causes . . . substantial emotional distress," elements

22   which provided additional guidance as to whether someone has violated the statute. 753 F.3d at 944.

23   Similarly, the court in *United States v. Sutcliffe*, 505 F.3d 944, 953-54 (9th Cir. 2007), narrowed the

24   federal threats statute to proscribe only "true threats," since the statute expressly required a threat

25   either "to kidnap" or "to injure" another. In contrast, § 223(a)(1)(C)'s unqualified use of the words

26   "abuse, "threaten," and "harass," impermissibly brings protected, "harmless expressions" within its

27
28   [3] Mr. Weiss has standing to challenge § 223(a)(1)(C)'s vagueness because "the statute is impermissibly vague in all of its applications." *United States v. Westbrook*, 817 F.2d 529, 532 (9th Cir. 1987) (quoting *Parker v. Levy*, 417 U.S. 733, 757 (1974)).

purview. *Wurtz v. Riley*, 719 F.2d 1438, 1442 (9th Cir. 1983) (successful facial challenge of threats statute due to its application beyond unprotected "true threats"); *see also Rodriguez*, 605 F.3d at 708 ("There is no categorical exception to the First Amendment for harassing speech"); *Watts v. United States*, 394 U.S. 705, 708 (First Amendment protects "unpleasantly sharp attacks" and "vituperative, abusive, and inexact" speech). "Because the [statute] does not define the terms . . . 'threaten,' 'abuse,' or 'harass,' the speaker is not given adequate notice as to what forms of potentially legitimate speech—including symbolic speech—may run afoul of the [law]." *Church of Am. Knights of Ku Klux Klan v. City of Erie*, 99 F. Supp. 2d 583, 592 (W.D. Pa. 2000).

Additionally, the government's interpretation of the phrase "without disclosing his identity" also highlights the statute's vagueness. *See* Gov't Opp. at 15 (arguing § 223(a)(1)(C) excludes situations in which the communication or username/account "contains identifying information"). If the government's construction of this phrase is correct, no objective standards guide how much "identifying information" one needs to disclose to escape liability. Would a username with a person's first name and birth year suffice? Or a profile photo that depicts the account holder with other unnamed people? Or an email address that contains a person's online identity, but not legal name?

The government responds in a conclusory fashion that "the statute provides sufficiently clear standards" for objective enforcement of the statute, Gov't Opp. at 11, but fails to articulate what those standards are. For example, as a practical matter, the government fails to answer how police would be able to determine whether someone had the requisite subjective intent. *See* Def. Opening at 13-14. Not only does this complete lack of objective standards "make discriminatory enforcement a real possibility," but also it chills speech, as "a statute that demands self-censorship—that one police one's own thoughts and subjective intent—impermissibly sacrifices the public interest in the free exchange of speech and ideas." *Sheehan*, 272 F. Supp. 2d at 1149.

**B.    The government fails to identify a single limitation that sufficiently restricts the statute's substantial overbreadth.**

**1.    The government's own case citations hold that § 223(a)(1)(C) regulates speech, not conduct.**

In arguing § 223(a)(1)(C) prohibits conduct instead of speech, the government misstates the holding of *United States v. Bowker*, 372 F.3d 364, 379-80 (6th Cir. 2004), which did not reject

1    defendant's overbreadth challenge because the statute regulated conduct. *See* Gov't Opp. at 14. To

2    the contrary, *Bowker* expressly acknowledged that § 223(a)(1)(C) prohibited speech, but nonetheless

3    upheld its constitutional validity because it regulated the "distinctly different realm of [telephone]

4    communication" which can permit the intolerable invasion of a call recipient's privacy. *Id*. at 379

5    (contrasting speech at issue in *Coates*, 402 U.S. 611).

6    Anonymous Internet speech does not implicate the same potential invasion of privacy dangers

7    as anonymous telephone speech. *See*, *e.g.*, *Reno*, 521 U.S. at 868 ("communications over the Internet

8    do not 'invade' an individual's home or appear on one's computer screen unbidden"). Instead, speech

9    on the Internet is more similar to speech on the public sidewalk in *Coates*. Internet speech often

10   occurs in a "public forum" where users can conveniently "avoid [unwanted] speech" and "have the

11   option of ignoring" it by simply navigating to a different webpage. *Bowker*, 372 F.3d at 379. And

12   anonymous Internet communications, even when targeted and unwanted, provide Internet users "little

13   reason to fear for their safety," as they can respond and "confront the speaker if they so choose," or

14   block a user from initiating contact again. *Id*. Thus, Mr. Weiss does not contend that "the basic

15   principles of freedom of speech" differ in the Internet context, *see* Gov't Opp. at 12, but that

16   *Bowker*'s overbreadth reasoning in the telephone context does not apply when the "domain of

17   speech" is the Internet. *See also id*. at n. 1. Mr. Weiss's speech is even a step further removed from

18   the telephone calls in *Bowker*, as Mr. Weiss submitted an online form where Senator McConnell

19   actively solicited comments from the public. Once again, the Court should reject the government's

20   attempt to curtail the exercise of First Amendment rights by relabeling speech as conduct.

### 2.    The government erroneously assumes that a speaker's subjective intent categorically converts protected speech into proscribable speech.

21

22   Sec. 223(a)(1)(C)'s overbreadth is wholly unprecedented. The parties agree that § 223(a)(1)(C)

23   defines "telecommunication device" so "broadly" that it implicates all speech on the Internet. *See*

24   Gov't Opp. at 15. From there, the statute does not whittle down much. The government offers three

25   restrictions it believes limits the statute's breadth: the anonymity requirement, the specific person

26   requirement, and the intent requirement. Gov't Opp. at 15-17. Yet, none of these restrictions—taken

27   together or apart—narrow the statute's scope to cover only constitutionally proscribable speech.

28

First, the statute's anonymity requirement does not limit its overbreadth. The Supreme Court has repeatedly held that the First Amendment protects anonymous speech. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995); *Buckley v. Amer. Constitutional Law Found., Inc.*, 525 U.S. 182, 200 (1999). The Ninth Circuit extends that right to include anonymous speech on the Internet. *Doe v. Harris*, 772 F.3d 563, 574 (9th Cir. 2014). So, while the anonymity requirement limits the statute's scope in general, it does not limit the statute's scope to speech unprotected by the First Amendment. Second, the same reasoning applies to the statute's specific person requirement. The First Amendment undoubtedly gives speakers the unfettered right to use the Internet to speak anonymously about a specific person. 772 F.3d at 574.

Finally, the government mistakenly assumes that the statute's subjective intent requirement trumps the First Amendment's protections of speech. The government argues that § 223(a)(1)(C) legitimately prohibits anonymous "political parody accounts," "disparaging statements about celebrities and public figures," and "anonymous participation in debates about issues of public and private concern" so long as that speech was made "with the intent to abuse, threaten, or harass a specific person." Gov't Opp. at 16. This dangerous assertion finds no refuge in First Amendment doctrine, as the Supreme Court has repeatedly held that speaking with a subjective "bad" intent does not transform protected speech into categorically unprotected speech. *See supra* sec. I. C. at 4 (citing *Snyder*, 562 U.S. 443; *Hustler*, 485 U.S. 46; *Garrison*, 379 U.S. 64); see also *Cassidy*, 814 F. Supp. 2d 574. The government "boldly asserts the broad right to outlaw any speech—whether it be anti-Semitic, anti-choice, radical religious, or critical of police—so long as a jury of one's peers concludes that the speaker subjectively intends to [abuse, threaten, or harass] others with that speech." *Sheehan*, 272 F. Supp. 2d at 1149. The Court cannot accept this "brash stance" which "strikes at the core of the First Amendment" and fails to comply with constitutional requirements. *Id.*

Thus, the anonymity requirement, the specific person requirement, and the subjective intent requirement in no way limit the statute's absolute restriction on protected speech.

### 3. The government's "legitimate application" examples highlight the existence of pertinent, more carefully drafted statutes that do not burden speech.

In endeavoring to demonstrate the statute's legitimate applications, the government

1   inadvertently underscores its vast breadth, as a statute's "burden on protected speech cannot be

2   justified if it could be avoided by a more carefully drafted statute." *Reno*, 521 U.S. at 874. In offering

3   three examples of the statute's "legitimate applications" to Internet conduct, the government invokes

4   other, "more carefully drafted" federal statutes that also criminalize its examples, but with far fewer

5   burdens on protected speech. *See* Gov't Opp. at 16. The government's second example utilizes the

6   federal anti-stalking statute, 18 U.S.C. § 2261(A), which in addition to "intent to harass," requires

7   proof that defendant engaged in a "course of conduct" that caused a specific person to suffer

8   "substantial emotional distress." *Id.* (citing *United States v. Sayer*, 748 F.3d 425, 433-46 (1st Cir.

9   2014)). The federal computer hacking statute, 18 U.S.C. § 1030, prohibits the conduct in the

10  government's fourth example without imposing restrictions on speech. *Id.*; *see*, *e.g.*, *Fidlar Techs. v.*

11  *LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016) (hacking statute "encompasses

12  clearly destructive behavior such as using a virus or worm or deleting data" and "less obviously

13  invasive conduct, such as flooding an email account"). And the federal threats statute, 18 U.S.C. §

14  875(c), proscribes the unprotected speech in government's third example, but contains narrowing

15  language limiting its coverage to "true threats." *See*, *e.g.*, *Sutcliffe*, 505 F.3d at 953-54.

16        Instead of establishing the statute's legitimate applications, these examples emphasize §

17  223(a)(1)(C)'s substantial and impermissible "burden on protected speech," as already-existing,

18  narrower statutes circumscribe the same conduct without curtailing protected speech. Likewise, a

19  review of state statutes prohibiting "harassment" highlights Congress's utter failure to comply with

20  the First Amendment and create a sufficiently narrow statute to avoid unnecessarily burdening

21  speech. *See* Exhibit E, Index of Selected State Harassment Statutes (compare § 223(a)(1)(C)'s

22  elements to state statutes which require more, i.e. physical contact, repeated or unwanted contact, no

23  legitimate purpose, or language to restrict its scope to unprotected speech). In crafting § 223(a)(1)(C),

24  Congress used a machete where the Constitution required a scalpel.

25                                      **CONCLUSION**

26        For the aforementioned reasons, the government failed to meet its burden to prove that its

27  prosecution of Mr. Weiss for pure political speech complies with the First Amendment. Therefore, Mr.

28  Weiss respectfully requests the Court grant his Motion to Dismiss the Indictment with prejudice.

1

2      Dated:      April 15, 2020                Respectfully submitted,

3                                               STEVEN G. KALAR
4                                               Federal Public Defender
                                                Northern District of California
5
6                                               _____/S_____
                                                ANGELA CHUANG
7                                               AMY SENIA
                                                Assistant Federal Public Defenders
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28