1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

HOWARD WEISS,

Defendant.

Case No.  20-cr-00013-CRB-1

**ORDER GRANTING MOTION TO DISMISS INDICTMENT**

Over the course of a year, Defendant Howard Weiss anonymously sent eight vitriolic messages to Senate Majority Leader Mitch McConnell through the Senator's official website contact form.  Weiss is charged with harassing use of a telecommunications device, a violation of 47 U.S.C. § 223(a)(1)(C).  See Indictment (dkt. 1).  He now brings a motion to dismiss the indictment, arguing that Section 223(a)(1)(C) is unconstitutional both on its face and as applied to him.  Mot. (dkt. 15).  Weiss's messages were hateful, violent, and racist, but they were also protected speech.  The statute is unconstitutional as applied to him.  Accordingly, the Court grants the motion and dismisses the indictment.

**I.     BACKGROUND**

Senator McConnell's official website invites the public to contact him electronically through a fillable form.  Chuang Decl. Ex. A (Senate Form) (dkt. 16-1).  The website states, "I welcome your thoughts and concerns and would like to encourage you to share them with me." Id.  It adds, "I look forward to hearing from you!"  Id.  Between October 2018 and October 2019, Weiss, using fictitious aliases, wrote eight messages through the online contact form.  See Chuang Decl. Ex. B (Indicted Messages) (dkt. 16-2).  To put it mildly, the messages expressed Weiss's

intense displeasure with Senator McConnell's politics and the ill well he feels toward Senator McConnell.  Id.

### A.      October 2, 2018 Email

On October 2, 2018, Weiss, who lives in the Northern District of California, used his cell phone to send an email to Senator McConnell through the Senator's online form.  Opp'n Ex. A1 (dkt. 19-2); Opp'n Ex. A11.  He later explained that he used Kentucky aliases to ensure that the Senator would receive the emails.  Opp'n Ex. A11 at 1:13–1:25.  The October 2, 2018 email states:

> Ms. Sylvia Buccatini
>
> 76623 Sylvan Ave
>
> Louisville, Kentucky 40025
>
> 5027773443 (H)
>
> turtletheresistancewillbtherefritokillu@hotmail.com
>
> 10/2/18
>
> 73.162.224.166
>
> turtle,
>
> If you push this for Friday, the resistance is coming to DC to slash your throat.  You will
>
> die in thestreet by DC resistance motherfucker!!!!!
>
> You will not live to regret it!!!!!!

Opp'n Ex. A1.  In a November 2019 interview with law enforcement, Weiss admitted to sending the email and stated that his intent was to harass Senator McConnell.  Ex. A11 at 5:19–30, 3:11–3:20, 3:27–4:44.

### B.      October 22, 2018 Email

On October 22, 2018, Weiss used his cell phone to send an email to Senator McConnell through the form using another alias:

> Airman Mitchell Valenti
>
> 1234 Repubmotherfucker Ave

United States District Court
Northern District of California

1   Resistance, Kentucky 00637

2   7778880022 (H)

3   criminalturtleisdone@deadrepublican.net

4   <IP>73.162.224.166</IP>

5   turtle cum drinker, The yelling resistance should have put a bullet in your head and then

6   kill all the people you love!

7   Opp'n Ex. A2 (dkt. 19-3); Opp'n Ex. A11 at 4:50–5:17, 6:40–6:45 (Weiss admitting he sent

8   emails via cell phone).  Weiss stated that his intent in sending the email was to harass Senator

9   McConnell.  Opp'n Ex. A11 at 3:11–3:20, 3:27–4:44.  In November of 2018, Weiss spoke with a

10  law enforcement officer about his October 22, 2018 email.  Opp'n Ex. A9 (dkt. 19-10).  The

11  officer suggested that Weiss be "mindful" because people could interpret his email as a threat.  Id.

12  at 6:15–6:45.

13  **C.      January 3, 2019 Email**

14  On January 3, 2019, Weiss used his cell phone to send an email to Senator McConnell

15  through the form, using an alias, without revealing his identity, and intending to harass the

16  Senator:

17  Brigadier General Salvatore Giovanni

18  11306 Bodley Drive

19  Louisville, Kentucky 40223-1339 KY03

20  5026379945 (H)

21  gofuckurself@hotmail.com

22  Date: 1/3/2019 8:59:54 PM

23  Subject: Your intelligence is zero

24  <IP>73.162.224.166</IP>

25

26  <ISSUE>INTELLIGENCE</ISSUE>

27  <MSG>You motherfucking scumbag crook turtle

28

United States District Court
Northern District of California

3

Go fuck yourself. I have been furloughed and you heartless bastard could give a shit. You fucking criminal. Someone needs to kill you!

You are going to lose next election and we will get rid of your satanic evil ass you loser fuckhead</MSG>

Opp'n Ex. A3 (dkt. 19-4) (excerpted); Ex. A11 at 3:11–3:20, 3:27–4:44, 4:50–5:17, 6:40–6:45.

**D.        April 9, 2019 Email**

On April 9, 2019, Weiss used his cell phone to send an email to Senator McConnell through the form, using an alias from Kentucky and with the intent to harass the Senator:

Date: Tue, 9 Apr 2019 14:11:31-0400 (EDT)

From: no-reply@mcconnell.senate.gov

To: webmail@mcconnell-iq.senate.gov

Message-ID: 357306803.8297.1554833491900@localhost

Subject: You are a criminal Russian asset


<IP>73.162.224.166</IP>

<APP>SCCMAIL

<PREFIX>Dr.</PREFIX>

<FIRST>Jehova</FIRST>

<LAST>Stark</LAST>

<ADDR1>733 N. Barbee Way</ADDR1>

<ADDR2></ADDR2>

<CITY>Louisville</CITY>

<STATE>KY</STATE>

<ZIP>40025</ZIP>

<PHONE>5024597761</PHONE>

<EMAIL>TheResistancewillexecuterepubs@fahrenheit.com</EMAIL>

<ISSUE>CRIME</ISSUE>

United States District Court
Northern District of California

1   &lt;MSG&gt;Turtle,

2   You motherfucking chinc lover, russian paid scumbag. With your fucking chinc father-in-

3   law bank rolling you. You fucking animal better get ready for the biggest loss of your

4   shitty heartless evil toxic life.

5   We know you will believe this is just unimportant bullshit, however you better not.

6   &lt;/MSG&gt;

7   &lt;/APP&gt;

8   Opp'n Ex. A4 (dkt. 19-5) (excerpted); Ex. A11 at 3:11–3:20, 3:27–4:44, 4:50–5:17, 6:40–6:45.  In

9   May 2019, Weiss met with law enforcement to discuss the April 9, 2019 email.  Opp'n Ex. A10

10  (dkt. 19-11).  He explained that his email was about the "elections coming up" and the "D.C.

11  Resistance," and how the Resistance is against the President, the cabinet, and the Republican

12  Congress.  Id. at 2:05–2:11, 3:04–3:12.  The officer told him to "be mindful."  Id. at 4:05–4:25.

13  **E.     June 5, 2019 Email**

14  On June 5, 2019, Weiss used his cell phone and a fictitious alias to send the following

15  email to Senator McConnell:

16  6/5/2019 10:30:31 PM

17  73.162.224.166

18  Brigadier General John Favreau

19  1801 Sulgrave Road

20  Louisville, Kentucky 40205-1645 KY03

21  5023547790 (H)

22  fuckyouturtlescum@fairfield.net

23

24  Subject: Losers will die turtle,

25

26  Go fuck yourself you fucking criminal motherfucker.

27  In 2020, You are fucking a closed case.  You are a fucking dog who will be put down!!!

28

United States District Court
Northern District of California

1
2
3

> The Kentucky Resistance is going to hang you by your pussy lips and punish you for what you think you got away this. Your consequential decision will afford you the most torture you will ever endure. scalia was the biggest asshole in the judicial system ever.

4
5
6
7
8
9

Opp'n Ex. A5 (dkt. 19-6); Opp'n Ex. A11 at 4:50–5:17, 6:40–6:45.  He later admitted (when asked whether it was a threat or harassment) that his intent was harassment.  Opp'n Ex. A11 at 3:11–3:20.  He explained that he was not motivated by what Senator McConnell had done to him but by what the Senator was doing to "the world, and our politics and our government and he's a piece of shit."  Id. at 3:30–3:43.

### F.  June 19, 2019 Email

10
11
12

On June 19, 2019, Weiss used his cell phone to send Senator McConnell the following message:

13
14
15
16
17
18

> Chief Master Sergeant Jedediah MacNamara
>
> 1801 Sulgrave Road
>
> Louisville, Kentucky 40205-1645 KY03
>
> 502.875.9343 (H)
>
> youfuckingchinklover@sinclair.com

19
20
21
22
23
24
25

> Date: 6/19/2019 11:59:35 PM
>
> Subject: The 2020 election
>
> <IP>73.162.224.166</IP>
>
> <ISSUE>OTHER</ISSUE>
>
> <MSG>You racist fucking criminal chinc loving motherfucker.
>
> You are going down in2020 and then you will suffer the consequences and they will burn your life down!</MSG>

26
27
28

Opp'n Ex. A6 (dkt. 19-7); Opp'n Ex. A11 at 4:50–5:17, 6:40–6:45.  He did so with the intent to harass Senator McConnell.  Opp'n Ex. A11 at 3:11–3:20, 3:27–4:44.

**G.      July 19, 2019 Email**

On July 19, 2019, Weiss used his cell phone and a fictitious alias to send the following email to Senator McConnell with harassing intent:

Colonel Alfonso Fujimori

1801 Sulgrave Road

Louisville, Kentucky 40205-1645 KY03

502-577-9033 (H)

mcconnellufuckinggookfucker@hotmail.com

Subject: We need your chink whore to go back

"To where the fucking gook came from. You motherfucking racist scum. The Kentucky Resistance says they are going to cut your throat from ear to ear and then your gook wife's."

Opp'n Ex. A7 (dkt. 19-8); Opp'n Ex. A11 at 3:11–3:20, 3:27–4:44, 4:50–5:17, 6:40–6:45.

**H.      October 16, 2019 Email**

On October 16, 2019, Weiss used his cell phone to send the following email to Senator McConnell:

Ms. Orleetina Georgabara

17 Meadow Lane

Fort Thomas, Kentucky 41075–1032 KY04

859.244.7498 (H)

youareadeadmanasap@yahoo.com

Date: 10/16/2019 2:03:52 AM

Subject: The gravity of your nonexistence

<IP>73.162.224.166</IP>

<ISSUE>OTHER</ISSUE>

<MSG>Whether you believe it or not, after watching Frontline the Kentucky Resistance is going to totally execute you. They have stated youare a deadman! And soon. We are so glad to hear that they are finally going to take action. We cannot wait to know you are dead.</MSG>

Opp'n Ex. A8 (dkt. 19-9); Opp'n Ex. A11 at 4:50–5:17, 6:40–6:45.  Weiss used a fictitious alias and his intent was to harass Senator McConnell.  See Opp'n Ex. A11 at 1:13–1:25, 6:11–6:35, 3:08–3:20.

## I.  November 13, 2019 Interview

On November 13, 2019, law enforcement officers went to Weiss's house to execute a search warrant, and they conducted a recorded, non-custodial interview with him.  See Opp'n Ex. A11.  Weiss admitted that he used his cell phone to send the eight messages to Senator McConnell and that he did so to harass, not threaten, the Senator.  Id. at 3:08–3:20, 4:50–5:17, 5:39–6:04, 6:40–6:45.  He stated that he decided to harass Senator McConnell because the Senator made political decisions with which he disagreed.  Id. at 3:27–3:50, 5:39–6:04.  Weiss admitted that he used racial slurs in his emails in furtherance of his intent to harass the Senator.  Id. at 4:00–4:44 ("that's just terrible harassment, that's just anger and bullshit.").  He further stated that he used Kentucky aliases to ensure that Senator McConnell would receive the emails.  Id. at 1:13–1:25. The law enforcement officer suggested that Weiss be "mindful," because other people could perceive his email as a threat.  Id. at 6:15–6:45.

## J.  Procedural Posture

On January 16, 2020, a grand jury returned a one-count indictment charging Weiss with harassing use of a telecommunications device in violation of 47 U.S.C. § 223(a)(1)(C). Indictment.  Weiss now moves to dismiss the indictment.  Mot.

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Courts may grant a pretrial motion to dismiss an indictment when it seeks to resolve questions of law, not

fact.  United States v. Schulman, 817 F.2d 1355, 1358 (9th Cir. 1987).  One such instance is when a defendant argues that the statute under which he faces prosecution violates the First Amendment as a matter of law.  See, e.g., United States v. Alvarez, 617 F.3d 1198, 1201 (9th Cir. 2010), aff'd, 567 U.S. 709 (2012).[1]

## III.    DISCUSSION

Section 223(a)(1)(C) provides that "Whoever . . . utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person . . . shall be fined under Title 18 or imprisoned not more than two years, or both."  Weiss challenges the statute as unconstitutional (A) facially and (B) as applied to him.  Mot.

### A.    Facial Challenge

Weiss argues that Section 223(a)(1)(C) is facially unconstitutional, because it is both vague and overbroad.  See Mot. at 10–14.  "A facial challenge is an attack on a statute itself as opposed to a particular application" of that statute.  City of Los Angeles v. Patel, 576 U.S. 409, 415 (2015).  Facial challenges are "'the most difficult . . . to mount successfully.'"  Id. (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  Vagueness and overbreadth are two distinct but overlapping doctrines.  See City of Chicago v. Morales, 527 U.S. 41, 52 (1999).

#### 1.    Vagueness

A statute is void for vagueness under the Due Process Clause of the Fifth Amendment "if it fails to draw reasonably clear lines between lawful and unlawful conduct."  See Kramer v. Price, 712 F.2d 174, 176 (5th Cir. 1983) (citing Smith v. Goguen, 415 U.S. 566, 574–78 (1974)).  Importantly, though, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  Parker v. Levy, 417 U.S. 733, 756 (1974).  "[E]ven if the outermost boundaries" of a statute "may be imprecise, any such uncertainty has little relevance" where the challenged conduct "falls squarely within the hard core of the statute's proscriptions . . . ."

---

[1] Weiss's present motion makes purely legal arguments; he reserves the right to dispute at trial that he had the subjective intent to abuse, threaten, or harass.  Mot. at 2 n.1.

1   Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973) (internal quotation marks omitted).[2]

2         A recent case from this Circuit is instructive.  In United States v. Osinger, 753 F.3d 939,

3   944–45 (9th Cir. 2014), a defendant who sent threatening and sexually explicit messages about an

4   ex-girlfriend was prosecuted for stalking in violation of, inter alia, 18 U.S.C. §§ 2261A(2)(A), and

5   he challenged that statute as vague.  The Circuit explained that "[c]ontrary to Osinger's argument,

6   'harass' and 'substantial emotional distress' are not esoteric or complicated terms devoid of

7   common understanding."  Id.  The Circuit quoted with approval the Fourth Circuit's assertion that

8   "'[w]hatever other definitions one might hypothesize for the meaning of harass or intimidate, there

9   can be little doubt that [the defendant's] stalking falls within the conduct the statute is intended to

10  proscribe.'"  Id. (alterations in original) (quoting United States v. Shrader, 675 F.3d 300, 312 (4th

11  Cir. 2012)).  The court added that the stalking statute's intent requirement "thoroughly

12  undermine[d] Osinger's contention that he was unable to discern that his harassment . . . was

13  proscribed by [the statute]."  Id.

14        Here, there can be no doubt that Weiss's conduct—using his telephone to anonymously

15  send harassing messages to Senator McConnell—falls squarely within the statute's prohibition of

16  anonymously using a telecommunications device, "whether or not conversation or communication

17  ensues . . . with intent to abuse, threaten, or harass any specific person."  See 47 U.S.C. §

18  223(a)(1)(C).  As in Osinger, 753 F.3d at 945, the telephone harassment statute's intent

19  requirement further undermines any argument that Weiss would not have known that his conduct

20  was proscribed.

21        Weiss therefore lacks standing to challenge the statue for vagueness.

22              **2.      Overbreadth**

23        A statute is overbroad where "a substantial number of its applications are unconstitutional,

24  judged in relation to the statute's plainly legitimate sweep."  United States v. Stevens, 559 U.S.

25

26  _____

27  [2] Weiss argues that he has standing to challenge the statute because it is "impermissibly vague in
    all of its applications."  Reply (dkt. 23) at 6 n.3 (quoting United States v. Westbrook, 817 F.2d

28  529, 532 (9th Cir. 1987)).  But he makes no effort to demonstrate that this statute is vague in all of
    its applications, and his argument falls flat.

United States District Court
Northern District of California

460, 473 (2010) (quoting <u>Washington State Grange v. Washington State Republican Party</u>, 552 U.S. 442, 449 n.6 (2008)).  Unlike vagueness, overbreadth is "a limited exception to the traditional standing rule that a person to whom a statute may constitutionally be applied may not challenge that statute on the basis that it may conceivably be applied in an unconstitutional manner to others not before the court." <u>Staley v. Jones</u>, 239 F.3d 769, 784 (6th Cir. 2001).  The purpose of the overbreadth doctrine is to protect restrictions on <u>unprotected</u> speech from chilling <u>protected</u> speech, a concern that "attenuates as the otherwise unprotected behavior . . . moves from pure speech toward conduct." <u>Virginia v. Hicks</u>, 539 U.S. 113, 124 (2003) (internal quotation marks omitted).  "[A] law's application to protected speech must be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications . . . before applying the 'strong medicine' of overbreadth invalidation." <u>Id.</u> at 119–20 (quoting <u>Broadrick</u>, 413 U.S. at 613).

While the Ninth Circuit has not adjudicated an overbreadth challenge to Section 223(a)(1)(C), the Sixth and Eleventh Circuits both have, and both found the statute constitutional. In <u>Bowker</u>, 372 F.3d at 370–74, a defendant was charged with telephone harassment in violation of section 223(a)(1)(C), <u>inter alia</u>, when he sent threatening emails and made threatening telephone calls to a television reporter with whom he had become obsessed.  The Sixth Circuit rejected Bowker's overbreadth challenge to the telephone harassment statute, explaining that "the focus of the telephone harassment statute is not simply annoying telephonic communications.  It also prohibits abusive, threatening or harassing communications." <u>Id.</u> at 379.  The court explained that the speech limited by the statute was "circumscribed" because "individuals receiving unwelcome, anonymous telephone calls . . . have to deal with much more inconvenience to avoid the speech[,]" "these calls usually are targeted toward a particular victim and are received outside of a public forum," and because the calls are anonymous, they are both more frightening and harder to confront.  <u>Id.</u>

Importantly, the Sixth Circuit "acknowledge[d] that the telephone harassment statute, if interpreted to its semantic limits, may have unconstitutional applications[,]" and it specifically referenced <u>political communications</u>: "if Bowker had been charged with placing anonymous

United States District Court
Northern District of California

1   telephone calls to a public official with the intent to annoy him or her about a political issue, the

2   telephone harassment statute might have been unconstitutional as applied to him." Id. at 379–80

3   (citing United States v. Popa, 187 F.3d 672, 677–78 (D.C. Cir. 1999)). But it held that Bowker's

4   calls to the reporter were "not constitutionally protected[,]" and therefore, even if "application of

5   the telephone harassment statute may be unconstitutional in certain instances[,]" facial invalidation

6   was inappropriate. Id. at 380 (citing, e.g., Parker v. Levy, 417 U.S. 733, 760 (1974) ("facial

7   invalidation not appropriate when the remainder of the statute 'covers a whole range of easily

8   identifiable and constitutionally proscribable conduct'")). The court explained that "[w]hatever

9   overbreadth exists in the statute 'can be cured on a case-by-case basis.'" Id. (citing Staley, 239

10  F.3d at 787 (citing Broadrick, 413 U.S. at 615–16)).

11       Two years after Bowker, the Eleventh Circuit decided Eckhardt, 466 F.3d 938. In that

12  case, the defendant was charged with telephone harassment in violation of section 223(a)(1)(C)

13  when he made 200 threatening and sexually explicit phone calls over the course of a year and a

14  half to a union office worker. Id. at 942. The Eleventh Circuit rejected Eckhardt's vagueness and

15  overbreadth challenges to the statute, relying on Bowker. Id. at 943–44. It explained that

16  Eckhardt's calls did not address "matters of public concern[,]" rather, "[t]he overarching purpose

17  of Eckhardt's sexually laced calls was to harass and frighten" the office worker. Id. at 944. As in

18  Bowker, such speech was "not constitutionally protected." Id. (quoting Bowker, 372 F.3d at 380).

19  And so the court determined that the statute was not overbroad. Id.

20       Bowker and Eckhardt are distinguishable because (as they both acknowledge) neither

21  involved an as-applied challenge involving political speech. This order addresses that issue in the

22  next section. Strictly as to overbreadth, Weiss attempts to distinguish the two cases by arguing

23  that neither involve communication over the Internet. See Mot. at 10–12 (extensive argument

24  about the "unique features of the internet"). That is a distinction without a difference. First

25  Amendment analysis does not change depending on whether the communication takes place online

26  or offline. See, e.g., United States v. Sutcliffe, 505 F.3d 944, 953–54 (9th Cir. 2007) (applying

27  traditional First Amendment principles in online threats case). The Supreme Court has explained

28  that "whatever the challenges of applying the Constitution to ever-advancing technology, the basic

principles of freedom of speech and the press, like the First Amendment's command, do not vary

when a new and different medium for communication appears." Brown v. Ent. Merchs. Ass'n,

564 U.S. 786, 790 (2011) (internal quotation marks and citation omitted).  Moreover, neither

Bowker nor Eckhardt limited their analysis to phone calls, and their concerns track relatively well

onto Internet communications: anonymous, harassing emails can be both frightening and

unwelcome, just like phone calls, if slightly less so because the listener is not holding a phone up

to his ear with the speaker on the other end.[3]

Applying traditional overbreadth analysis, then, the first step is to determine whether the

statute restricts speech.  See United States v. Williams, 553 U.S. 285, 293 (2008) ("it is impossible

to determine whether a statute reaches too far without first knowing what the statute covers.").

The government argues that "the statute regulates the user's non-expressive conduct rather than

his or her speech" because what it prohibits is "the making of a phone call and use of a

telecommunications device . . . regardless of whether the user sought to engage in speech of any

kind." Opp'n (dkt. 19) at 14.  While the statute targets the use of a telecommunications device

"whether or not conversation or communication ensues," see 47 U.S.C. § 223(a)(1)(C), many uses

of a telephone will involve conversation or communication.  Put another way, the statute does not

target only the use of a telecommunications device when a conversation or communication does

not occur; it targets such use "whether or not conversation or communication ensues," meaning

that some of the targeted conduct (practically, probably most of the targeted conduct) will include

conversation or communication.  See 47 U.S.C. § 223(a)(1)(C).  Even the government's argument

that "[t]he purpose of the statute is to protect individuals from 'abusive, threatening or harassing

communications'" recognizes implicitly that "communications" are frequently involved.  See

Opp'n at 14 (quoting Bowker, 372 F.3d at 379).  The Court therefore concludes, as the Sixth

Circuit did, that while the statute might be focused on conduct, the statute does—at least in part—

United States District Court
Northern District of California

---

[3] Weiss argues that his contention is not that the basic principles of the First Amendment differ in the context of the Internet, but that Bowker's reasoning about phone calls does not apply when the domain of speech is the Internet, and particularly where his speech was submitted via an online form where Senator McConnell solicited comments from the public.  Reply at 8.  That argument is not persuasive, and, in so arguing, Weiss veers into as-applied analysis.

restrict speech.  See Bowker, 372 F.3d at 379 ("the domain of prohibited speech is . . . circumscribed . . . under the telephone harassment statute . . . .").

The second step for the Court is "whether the statute, as . . . construed . . . , criminalizes a substantial amount of protected expressive activity."  Williams, 553 U.S. at 297.  The government argues that "even if the statute incidentally restricts speech, that speech is unprotected by the First Amendment . . . ."  Opp'n at 14 (emphasis added).  The government relies on the argument it makes "in the as-applied section below" in its brief, id., which, as the Court explains below, is flawed.  Along with a noncommunicative phone call where the caller hangs up immediately in order to harass the recipient, or a phone call where the caller communicates a true threat that he is going to kill the recipient, the statute also applies to a phone call where the caller communicates his political views in order to harass the recipient into changing his position.  The statute therefore criminalizes some protected speech.  The question is whether the restriction on protected speech is substantial.  See Stevens, 559 U.S. at 473.

The government next argues that "even if § 223(a)(1)(C) reaches protected speech, it does not do so in substantial part" because there are many legitimate applications of the statute, and "the number of improper restrictions on protected speech are not substantial in an absolute sense or in comparison to the many legitimate applications."  Opp'n at 14 (emphasis added).  This is probably correct.  Although there are some illegitimate applications of the telephone harassment statute (and the Court concludes below that this case is one), many of its applications are unobjectionable.  The statute does not criminalize all uses of a phone, but only those uses where the user does not disclose his identity, and where he intends to abuse, threaten, or harass a specific person.  47 U.S.C. § 223(a)(1)(C).  As the government points out, its anonymity requirement prevents the statute's application to communications in which a message identifies the sender.  Opp'n at 15.  Its requirement that the intent to abuse, threaten or harass be directed at a specific person prevents the statute's application to a religious organization, political party, company, or government agency.  Id.

The statute can legitimately be applied to an individual sending threatening emails and making threatening telephone calls to a television reporter, see Bowker, 372 F.3d at 370–74, or

14

making 200 threatening and sexually explicit phone calls over the course of a year and a half to a union office worker, see Eckhardt, 466 F.3d 938, or anonymously faxing full pages of black ink to a victim's fax machine, or anonymously emailing a computer virus or spam email to a victim to harass him, or making anonymous calls threatening to kill or injure that person, see Opp'n at 16. While Weiss endeavors to identify some illegitimate applications of the statute, see Mot. at 14 ("anonymous websites, blogs, and accounts criticizing public figures; anonymous posts on message boards during heated debates about issues of public concern; anonymous tweets responding to others using sarcastic comments or 'abusive' insults"), those examples would not trigger the statute unless the sender also had the intent to threaten, abuse, or harass a specific person, see 47 U.S.C. § 223(a)(1)(C).[4]

Accordingly, the Court concludes that the elements of section 223(a)(1)(C) minimize the number of illegitimate statutory applications, and that the restrictions on protected speech are not substantial. As the Sixth Circuit said, "[w]hatever overbreadth exists in the statute 'can be cured on a case-by-case basis.'" See Bowker, 372 F.3d at 380 (citation omitted).

### B.     As-Applied Challenge

Weiss's strongest argument is that in this case, as applied to his speech, the statute is unconstitutional. See Mot. at 2–9. "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998). Notwithstanding the First Amendment's presumptive protection of all speech against government interference, laws that restrict speech can be valid if they either: (1) pass the appropriate level of scrutiny; or (2) restrict speech in a narrow, traditionally-recognized category of unprotected speech, such as obscenity, defamation, fraud, incitement, fighting words, child pornography, true threats, and speech integral to criminal conduct. United States v. Waggy, 936 F.3d 1014, 1017 (9th Cir. 2019), cert. denied, No. 19–7544, 2020 WL 3405891 (U.S. June 22,

---

[4] Some of those examples might also constitute political speech—a separate issue addressed below.

2020); United States v. Alvarez, 567 U.S. 709, 717 (2012).

Weiss contends that Section 223(a)(1)(C) is a content-based restriction on speech that does not pass strict scrutiny, and that the government cannot meet its burden of proving that his language falls into one of the narrow categories of proscribable speech. Mot. at 2–9. The government responds that Section 223(a)(1)(C) "regulates conduct and not speech[,]" and so strict scrutiny does not apply; it further argues that "[t]o the extent the statute incidentally burdened [Weiss's] speech while prohibiting his harassing use of a cell phone, the speech was . . . not subject to First Amendment protection." Opp'n at 21. This order explores both arguments.

### 1.    Appropriate Level of Scrutiny

#### a.    Strict Scrutiny

Weiss argues that Section 223(a)(1)(C) is content-based. Mot. at 5. Where a law is content-based, it must pass strict scrutiny; it is "presumptively unconstitutional and may be justified only if the government proves that [the law as applied is] narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015). In addition, "laws that, though facially content neutral, . . . cannot be 'justified without reference to the content of the regulated speech,' . . . must also satisfy strict scrutiny." Id. at 164.

There is some initial appeal to Weiss's argument that the statute is content-based and not merely a restriction on conduct. By way of comparison, the neighboring statute, 47 U.S.C. § 223(a)(1)(D), prohibits a person from making or causing another person's phone to ring repeatedly or continuously, with the intent to harass a person at that number. See 47 U.S.C. § 223(a)(1)(D). Whether or not a conversation ensues is completely irrelevant to Section 223(a)(1)(D)'s prohibited conduct of causing someone's phone to ring repeatedly. See United States v. Sandhu, 740 F. App'x 595, 596 (9th Cir. 2018), cert. denied, 139 S. Ct. 2037 (2019) (unpublished mem.) ("47 U.S.C. § 223(a)(1)(D) regulates conduct and does not regulate speech."). Not so here. Here, the most obvious way for the government to determine if someone who has used his phone has violated section 223(a)(1)(C)—i.e., used a telephone anonymously with the intent to abuse, threaten, or harass—is to analyze the content of that person's speech. See Popa, 187 F.3d at 675–

United States District Court
Northern District of California

United States District Court
Northern District of California

76 (suggesting that Section 223(a)(1)(C) might be content-based because it depends upon the caller not "disclosing his identity," which makes "the prohibition depend upon the content of the call.") (citing <u>McIntyre v. Ohio Elections Comm'n</u>, 514 U.S. 334, 345 (1995) (requirement that literature designed to influence voters in election contain name and address of persons responsible for documents "is a direct regulation of the content of speech.")).  The content of the call is also relevant to determining whether the caller had the requisite intent.  <u>See id.</u> at 675 ("the content may, as in this case, be evidence from which a jury can infer the speaker's intent").  Weiss imagines a caller who left eight anonymous messages over a one-year period on Senator McConnell's online form, but instead of telling the Senator that he is a "Russian paid scumbag," the caller tells the Senator that he is a hero and a patriot.  Mot. at 6.  Weiss argues, "[t]he supporter's <u>conduct</u> is identical" but he "would not face criminal prosecution."  <u>Id.</u> (emphasis original).[5]  It is tempting, then, to conclude that the statute is a content-based restriction on speech.

The Ninth Circuit has ruled that conclusion out, though.  In <u>Waggy</u>, the Ninth Circuit addressed the constitutionality of the state of Washington's telephone harassment statute, which provides, in pertinent part, "(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person . . . (b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues . . . is guilty of a gross misdemeanor . . . ."  <u>Waggy</u>, 936 F.3d at 1016.  The defendant there had called an employee at a VA center multiple times a day, demanded money, screamed obscenities, and acted irrationally.  <u>Id.</u> at 1016–17.  The Ninth Circuit rejected Waggy's argument that the statute was unconstitutional as applied to him, holding that the "whether or not conversation ensues" language demonstrated that the legislature was targeting conduct, not speech.  <u>Id.</u> at 1018.  The court concluded that "as applied to [Waggy, the Washington statute] regulates nonexpressive conduct and does not implicate First Amendment concerns."  <u>Id.</u> at 1019–20 ("In other words, the

---

[5] In response to the government's assertion at the motion hearing that the statute was not about sending a communication but "about using the device," the Court asked the government the following question: if someone met every element of section 223(a)(1)(C) <u>except</u> for "mak[ing] a telephone call or utiliz[ing] a telecommunications device," that would be speech—so why is it not speech when that person uses a telephone or telecommunications device?  The government replied only that this was not their view of the statute.

1  convictions are not for obscene speech, but rather for placing calls with the specific intent to

2  harass."); cf. Osinger, 753 F.3d at 944 (holding that the stalking statute "proscribes harassing and

3  intimidating conduct" and not speech).

4                                             **b.**          **Intermediate Scrutiny**

5          Following Waggy, the Court does not hold that Section 223(a)(1)(C) is a content-based

6  restriction on speech meriting strict scrutiny,[6] but instead that it regulates conduct and only

7  burdens speech incidentally.  See Opp'n at 17 ("Laws that restrict speech can be valid if they . . .

8  target conduct and only incidentally burden speech") (citing Waggy, 936 F.3d at 1017).  But as

9  Weiss points out, even a statute that targets conduct and only incidentally burdens speech must

10  still pass intermediate scrutiny: it must "'advance[ ] important governmental interests unrelated to

11  the suppression of free speech and . . . not burden substantially more speech than necessary to

12  further those interests.'"  See Reply at 1 (quoting Holder, 561 U.S. at 26–28).  The Court applies

13  intermediate scrutiny and holds, as in Popa, that the statute does not pass that test.  See Popa, 187

14  F.3d at 676 ("we need not decide whether § 223(a)(1)(C) is content based.  For accepting the

15  Government's argument that any incidental restriction § 223(a)(1)(C) places upon speech in a

16  particular case is content neutral, we would—as the Government suggests—apply intermediate

17  scrutiny . . . and the statute, as applied to Popa, does not survive even that less searching

18  inquiry.").

19          Popa is the only other Court of Appeals case (along with Bowker and Eckhardt) to analyze

20  the constitutionality of Section 223(a)(1)(C).  Popa had made seven phone calls over the course of

21  a month to Eric Holder, when Holder was the U.S. Attorney for the District of Columbia.  Popa,

22

23  _____

24  [6] Weiss argues that "[e]ven if § 223(a)(1)(C) generally regulates conduct in addition to speech, the
    Court must still apply strict scrutiny here, because Mr. Weiss's 'conduct triggering coverage under

25  the statute consists of communicating a message.'"  See Reply at 1 (quoting Holder v.
    Humanitarian Law Project ("HLP"), 561 U.S. 1, 27–28 (2010); see also Cohen v. California, 403

26  U.S. 15, 18 (1971) (holding that a statute purporting to regulate conduct actually regulated speech
    when "the only 'conduct' which the State sought to punish is the fact of communication.").  Weiss

27  also made this argument at the motion hearing.  The government would presumably respond that
    Weiss' conduct was anonymously using his phone with the intent to harass, and that his

28  communicating of a message was superfluous.  The Court need not reach this argument because it
    concludes that the statute fails as applied to Weiss even using immediate scrutiny.

187 F.3d at 673–74.  In the calls, Popa referred to Holder as "a criminal, a negro," a "criminal with cold blood," and a "whore, born by a negro whore, [who] became chief prosecutor of Washington, D.C."  Id.  Popa was charged with, and convicted of, violating Section 223(a)(1)(C).  Id. at 674. On appeal, the D.C. Circuit employed the test from United States v. O'Brien, 391 U.S. 367, 377 (1968), which provides that "a government regulation passes intermediate scrutiny if: [1] it is within the constitutional power of the Government; [2] it furthers an important or substantial governmental interest; [3] the governmental interest is unrelated to the suppression of free expression; and [4] the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  Id. at 676.

The court explained that in "determining whether the incidental restriction § 223(a)(1)(C) places upon speech 'is no greater than is essential to the furtherance of [an important governmental] interest,' we need consider only the 'annoy, abuse, . . . or harass' forms of the intent element."  Id. (alterations in original).  And it agreed with Popa's argument "that the Government's interest in protecting individuals from annoying, abusive, and harassing phone calls would be equally well served if the statute did not encompass 'public or political discourse [intended to] 'irritate,' 'bother,' 'insult,' etc.'"  Id. (alterations in original).  The court concluded that Section 223(a)(1)(C) "sweeps within its prohibitions telephone calls to public officials where the caller may not want to identify [him]self other than as a constituent and the caller has an intent to verbally 'abuse' a public official for voting a particular way on a public bill, 'annoy' him into changing a course of public action, or 'harass' him until he addresses problems previously left unaddressed."  Id. at 676–77.  Having determined that "the governmental interest at stake here is no less effectively furthered by a statute that gives a pass to those who intend in part to communicate a political message," the D.C. Circuit concluded that the statute "fail[ed] the fourth part of the O'Brien test."  Id. at 677.  The court concluded that Section 223(a)(1)(C) "fails intermediate scrutiny as applied to Popa's conduct[.]"  Id. at 678.

This Court adopts Popa's reasoning.  Bowker and Eckhardt were able to distinguish Popa because those cases did not involve political speech.  See Bowker, 372 F.3d at 379–80 (citing Popa, 187 F.3d at 677–78) ("if Bowker had been charged with placing anonymous telephone calls

United States District Court
Northern District of California

United States District Court
Northern District of California

1   to a public official with the intent to annoy him or her about a political issue, the telephone

2   harassment statute might have been unconstitutional as applied to him."); Eckhardt, 466 F.3d at

3   944 (noting that Eckhardt's calls did not address "matters of public concern," rather, "[t]he

4   overarching purpose of Eckhardt's sexually laced calls was to harass and frighten" the office

5   worker), 946 ("Unlike Popa, the instant case does not involve a government official and

6   Eckhardt's calls had virtually no meritorious component.").  Waggy likewise distinguished Popa

7   because, although Waggy argued on appeal that he had only wanted to talk about his medical care,

8   a jury had found that he had the requite intent to harass, and the "Washington Court of Appeals

9   specifically rejected the contention that the statute would prohibit calls to a public official 'in

10   which swear words are used in order to persuade the recipient to do something.'"  936 F.3d at

11   1018.  The Ninth Circuit explained that "[t]he court in Popa observed that . . . [Popa's]

12   'complaints about the actions of a government official were a significant component of his calls,' .

13   . . which is not the situation here."  Id. at 1018–19.

14          Here, a binding authority has not constructed the relevant statute as not restricting political

15   speech.  See id. at 1018.  Indeed, the statute has no carve-out for political speech.  See 47 U.S.C. §

16   223(a)(1)(C).  And here, Weiss's messages were political in nature.[7]  While the messages to

17   Senator McConnell were certainly vile, they were also often political, much like the messages that

18   Popa left for Holder.  See Popa, 187 F.3d at 673–74.  Weiss's frustration with the Senator's

19   performance as a government representative makes up a significant component of his messages:

20   "you single-handedly are killing America[,]" "you are going to lose the next election[,]" "you are

21   a criminal russian asset[,]" "scalia was the biggest asshole in the judicial system ever[,]" and "you

22   are going down in2020[.]"  Chuang Decl. Ex. B.  He refers to the Resistance, a grassroots

23   nationwide political movement dedicated to opposing President Trump's agenda.  Id.; Mot. at 8.

24   And he sent his messages through the form on Senator McConnell's website, which solicited

25   political feedback.  See Chuang Decl. Ex. A; see also Opp'n Ex. A11 at 3:30–3:43 (Weiss

26

27   _____

28   [7] Weiss asserts that the government does not really dispute this point, see Reply at 4, but that may
    not be correct, see Opp'n at 20 ("the references to Senator McConnell are simply direct and
    circumstantial evidence of defendant's intent to harass a specific person . . . .").

1    explaining to agent that he was motivated by what Senator McConnell was doing to "the world,

2    and our politics and our government and he's a piece of shit.").  That the messages are also hateful

3    and offensive, racist and violent does not mean that they lose their protection under the First

4    Amendment.[8]  The Supreme Court has explained that:

> [W]e must interpret the language Congress chose "against the
> background of a profound national commitment to the principle that
> debate on public issues should be uninhibited, robust, and wide-
> open, and that it may well include vehement, caustic, and sometimes
> unpleasantly sharp attacks on government and public officials."
> New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710,
> 721, 11 L.Ed.2d 686 (1964). The language of the political arena, like
> the language used in labor disputes, see Linn v. United Plant Guard
> Workers of America, 383 U.S. 53, 58, 86 S.Ct. 657, 15 L.Ed.2d 582
> (1966), is often vituperative, abusive, and inexact.

11   Watts v. United States, 394 U.S. 705, 708 (1969).  "The arguably inappropriate or controversial

12   character of a statement is irrelevant to the question whether it deals with a matter of public

13   concern."  Snyder v. Phelps, 562 U.S. 443, 453 (2011) (internal quotation marks omitted); see also

14   Boos v. Barry, 485 U.S. 312, 322 (1988) (quoting Hustler Magazine, Inc. v. Falwell, 485 U.S. 46,

15   56 (1988)) ("As a general matter, we have indicated that in public debate our own citizens must

16   tolerate insulting, and even outrageous, speech in order to provide 'adequate breathing space to the

17   freedoms protected by the First Amendment.'"); City of Houston, Tex. v. Hill, 482 U.S. 451, 462

18   (1987) (holding as to statute "not limited to fighting words nor even to obscene or opprobrious

19   language, but [that prohibited] speech that 'in any manner . . . interrupt[s]' an officer" that "[t]he

20   Constitution does not allow such speech to be made a crime."); Terminiello v. City of Chicago,

21   337 U.S. 1, 4 (1949) ("Speech is often provocative and challenging.  It may strike at prejudices

22   and preconceptions and have profound unsettling effects . . . ." but it is nonetheless protected by

23   the First Amendment "unless shown likely to produce a clear and present danger of a serious

24   substantive evil that rises far above public inconvenience, annoyance, or unrest.").

25           Because this case involves an individual's prosecution under Section 223(a)(1)(C) (not the

26   Washington state statute) for political speech (not apolitical speech), the Court parts ways with

27

28   _____
     [8] Importantly, they would lose their First Amendment protection if they constituted true threats, as
     discussed below.  See United States v. Bagdasarian, 652 F.3d 1113, 1116 (9th Cir. 2011).

United States District Court
Northern District of California

Waggy and follows Popa.  See also Waggy, 936 F.3d at 1021–22 (Tashima, J., dissenting) (reasoning that the majority's attempt "to distinguish Popa . . . falls far short"; arguing that the Washington telephone harassment statute "could have been drawn more narrowly, with little loss of utility to the state of Washington, by excluding from its scope those who intend to engage in public or political discourse," and that therefore "the statute fails even intermediate scrutiny as applied to Waggy.").  The Court holds that the statute does not pass intermediate scrutiny as applied to Weiss's speech.

## 2.     Unprotected Speech

The government argued in its briefing, though, that Section 223(a)(1)(C) "is validly applied to the facts in this case because, if the statute restricts [Weiss's] speech at all, the burdened speech is 'speech integral to criminal conduct' and unprotected by the First Amendment." Opp'n at 18 (quoting Waggy, 936 F.3d at 1017).  Speech integral to criminal conduct is one of the well-defined categories of unprotected speech that the government can restrict consistent with the First Amendment.  See Waggy, 936 F.3d at 1017 (citing Stevens, 559 U.S. at 468).  A second category of unprotected speech is true threats.  See Virginia v. Black, 538 U.S. 343, 359 (2003) (citing Watts, 394 U.S. at 708).  The government did not assert the "true threat" category at all in its briefing, despite Weiss having addressed it in his initial brief.  See Opp'n; Mot. at 4–5.  At the motion hearing, the government asserted for the first time that an "alternate basis" for deeming the speech unprotected is that it constitutes a true threat.  The Court now analyzes both the government's "primary theory," that the speech was speech integral to criminal conduct, and its new theory, that the speech was a true threat.

### a.     Speech Integral to Criminal Conduct

As to "speech integral to criminal conduct," the government contends that "any speech of [Weiss's] that is restricted by § 223(a)(1)(C) is integral to his criminal conduct in violating § 223(a)(1)(C)."  Opp'n at 18.  That reasoning is fatally circular.  "Speech integral to criminal conduct" does not mean that Congress can make a law criminalizing otherwise-protected speech, and then, because a defendant's speech violates the law, deem the speech to be "speech integral to

criminal conduct."  "[I]f the government criminalized any type of speech, then anyone engaging in that speech could be punished because the speech would automatically be integral to committing the offense.  That interpretation would clearly be inconsistent with the First Amendment . . . ." United States v. Matusiewicz, 84 F. Supp. 3d 363, 369 (D. Del. 2015).  As Eugene Volokh explained, the exception "can't justify treating speech as 'integral to illegal conduct' simply because the speech is illegal under the law that is being challenged.  That should be obvious, since the whole point of modern First Amendment doctrine is to protect speech against many laws that make such speech illegal."  Eugene Volokh, The 'Speech Integral to Criminal Conduct' Exception, 101 Cornell L. Rev. 981, 987 (2016) (hereinafter Volokh).  Moreover, "[i]t is not enough that the speech itself be labeled illegal conduct, e.g., 'contempt of court,' 'breach of the peace,' 'sedition,' or 'use of illegally gathered information.'  Rather, it must help cause or threaten other illegal conduct . . . which may make restricting the speech a justifiable means of preventing that other conduct."  Id. at 1011 (emphasis in original).

"Speech incident to criminal conduct" applies to speech that "is a mechanism or instrumentality in the commission of a separate unlawful act," apart from the speech itself.  People v. Relerford, 104 N.E.3d 341, 352 (Ill. 2017) (citing Stevens, 559 U.S. at 471).  The exception originates from the case of Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 492 (1949), in which, to pressure nonunion ice-sellers, a union picketed an ice company, demanding that it agree to stop supplying ice to the nonunion ice-sellers.  What the union was demanding of the ice company was illegal under Missouri law, which prohibited any agreement in restraint of trade in the sale of any product.  Id.  The union's picketing therefore was intended "to effectuate the purposes of an unlawful combination, and their sole, unlawful immediate objective was to induce [the ice company] to violate the Missouri law by acquiescing . . . ."  Id. at 502.  The Court explained that while "the agreements and course of conduct here were as in most instances brought about through speaking or writing . . . it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language . . . ."  Id.; see also Volokh at 1028 ("Many lower court decisions . . . have cited Giboney in cases factually much like Giboney itself:

23

1   cases where the speaker is soliciting the commission of some other crime.").

2        The existence of a separate unlawful act is key.  The Minnesota Supreme Court recently

3   explained that "statutes criminalizing the use of the Internet or an electronic device to engage in

4   communications with a child that relate to or describe sexual conduct and the intentional

5   solicitation of prostitution fall within the" exception, because such speech is "directly linked to

6   and designed to facilitate the commission of a crime."  In re Welfare of A. J. B., 929 N.W.2d 840,

7   852 (Minn. 2019).  "On the other hand," that court held that "speech advising, encouraging, or

8   assisting another to commit suicide was not speech integral to criminal conduct because the act

9   advocated for—suicide—is not illegal."  Id.

10       In Osinger, which the government relies on, see Opp'n at 18, the Ninth Circuit held that

11  the defendant's Facebook impersonation of the victim and his posting of sexually explicit

12  photographs of her was integral to his "course of conduct" of stalking her, which began with in-

13  person stalking even prior to his online speech, see Osinger, 753 F.3d at 947.  Had Osinger not

14  done anything but engage in free speech, the "speech integral to criminal conduct" exception

15  should not have applied, as Judge Watford wrote in a compelling concurring opinion.  See id. at

16  954 (Watford, J., concurring).  Judge Watford agreed with the majority's holding in that case

17  because "whatever difficulties may arise from application of the exception in other contexts, it

18  surely applies when the defendant commits an offense by engaging in both speech and non-speech

19  conduct, and the sole objective of the speech is to facilitate the defendant's criminal behavior."  Id.

20  at 950.  But see Volokh at 1036–42 (criticizing Osinger and noting that "[s]peech that is intended

21  to annoy, offend, or distress does not help cause or threaten other crimes, the way solicitation or

22  aiding or abetting does.").

23       In United States v. Meredith, another case upon which the government relies, see Opp'n at

24  18, the defendants were charged with conspiring to defraud the United States, 685 F.3d 814, 817

25  (9th Cir. 2012).  The Circuit held that the defendants' speech (explaining how to avoid taxes) was

26  integral to the crime of defrauding the United States, which was also evidenced by defendants'

27  selling of books explaining how to avoid taxes and selling a type of financial trust that they

28  claimed was exempt from taxes.  Meredith, 685 F.3d at 818.  "[T]he defendants did far more than

United States District Court
Northern District of California

1     advocate.  They developed a vast enterprise that helped clients hide their income from federal and

2     state tax authorities."  Id. at 817–18.

3            The government also relies on Sandhu, see Opp'n at 19, discussed above, in which the

4     Ninth Circuit held that any speech involved in the commission of 47 U.S.C. § 223(a)(1)(D)—the

5     statute making it a crime to cause another person's phone to ring repeatedly—was "speech integral

6     to criminal conduct," 740 F. App'x at 596.  The government asserts that "[t]he same analysis

7     applies here."  Opp'n at 19.  But section 223(a)(1)(D) targets conduct separate and apart from any

8     speech—speech was irrelevant to the prohibited conduct of "caus[ing] the telephone of another

9     repeatedly or continuously to ring, with the intent to harass . . . ."  See 47 U.S.C. § 223(a)(1)(D);

10    see also Osinger, 753 F.3d at 954 (Watford, J., concurring) (distinguishing the criminalization of

11    pure speech from cases involving "non-communicative aspects of speech, like repeated unwanted

12    telephone calls that are harassing due to their sheer number and frequency.").  The First

13    Amendment does not prevent Congress from criminalizing the causing of someone's phone to ring

14    repeatedly; it does prevent Congress from criminalizing political speech.[9]

15           The government also cites to United States v. Alvarez as recognizing the "speech integral

16    to criminal conduct" exception.  See Opp'n at 20.  In fact, while the Supreme Court in Alvarez

17    recognized the existence of that exception, see 567 U.S. at 717, it did not employ that exception to

18    resolve the case.  Alvarez had been charged with and convicted for violating the Stolen Valor Act,

19    because he lied about receiving the Congressional Medal of Honor.  Id. at 714.  The Ninth Circuit

20    reversed Alvarez's conviction, and the Supreme Court affirmed, holding that the Stolen Valor Act

21    was a content-based restriction on free speech that violated the First Amendment.  Id. at 724, 729.

22    Applying the government's reasoning here would have led the Court to uphold Alvarez's

23    conviction: his speech violated the Stolen Valor Act, so it was speech integral to violating the

24

25    _____

      [9] Imagine, for example, a law criminalizing the printing of a flyer with the intent to undermine the
26    President.  The government's argument here would mean that what is really criminalized is the
      printing of the flyer with bad intent, and that whatever political speech is on the flyer is integral to
27    the criminal conduct of printing a flyer with unlawful intent.  That would be absurd.  As Weiss
      asserts: "The First Amendment limits Congress; Congress does not limit the First Amendment."
28    See Reply at 2.

Stolen Valor Act.  Instead, the Court found that fact patterns involving "speech integral to criminal conduct" were "inapplicable[.]"  Id. at 721.

Similarly, while the government argues that "[t]he Popa decision has no bearing here because it did not address the speech integral to criminal conduct exception[,]" see Opp'n at 20, the better interpretation of Popa is that it did not employ such an expansive interpretation of the exception because the law does not support it.  Popa committed no criminal conduct other than his harassing phone calls.  See Popa, 187 F.3d at 673–74.  Why would the D.C. Circuit have bothered to undertake a lengthy analysis of intermediate scrutiny as applied to Popa's speech when it "could merely hold that the speech has been criminalized, apply the exception, and be done with it"?  See Reply at 2.

As in Popa, this case involves no criminal act by Weiss apart from his violation of the statute by using his telephone to harass a public official with his speech (some of which was political).[10]  The government conceded as much at the hearing.  When the Court asked the government what criminal conduct Weiss's speech facilitated, the government identified that conduct as the harassing and threatening use of a device.  Weiss was not also soliciting a company to enter into an agreement in restraint of trade, he was not also engaging in a course of conduct of stalking, and he was not also conspiring to defraud the United States.  Because Weiss's speech did not help cause or threaten other illegal conduct, the "speech incident to criminal conduct" exception does not apply.

### b.    True Threats

As to "true threats," the government argued at the motion hearing that Weiss's conduct met the objective and subjective standard for true threats, that law enforcement twice warned Weiss that his messages could be perceived as threatening, and that Senator McConnel's staff flagged Weiss's messages as threatening.

---

[10] Moreover, there is no categorical exception to the First Amendment for speech made with the intent to harass someone.  See Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist., 605 F.3d 703, 708 (9th Cir. 2010) (holding that the "right to be free of purposeful workplace harassment under the Equal Protection Clause" of the Fourteenth Amendment did "not retract[ ] the freedoms enshrined in the First.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    A statement is objectively a true threat only if it "would be understood by people hearing

2    or reading it in context as a serious expression of an intent to kill or injure" another person.

3    Bagdasarian, 652 F.3d at 1118.  In Bagdasarian, the Ninth Circuit reversed the defendant's

4    conviction for threatening to kill presidential candidate Barack Obama, holding that predictive and

5    exhortatory statements, such as "Obama fk the niggar, he will have a 50 cal in the head soon,"

6    were not true threats.  Id. at 1118–19, 1122.  Such statements conveyed "no explicit or implicit

7    threat on the part of [the defendant] that he himself will kill or injure Obama."  Id. at 1119.  The

8    defendant's further statement, "[S]hoot the nig," was "an imperative intended to encourage others

9    to take violent action, if not simply an expression of rage or frustration," but it did not suggest that

10    the defendant himself was going to shoot Obama.  Id.

11    Weiss's comments were also steeped in "rage and frustration," see id., and they were

12    indisputably violent.  Nonetheless, read in context, the statements predicted that other people

13    would hurt Senator McConnell, not that Weiss would.  See, e.g., Opp'n Ex. A1 (stating, "You will

14    die in thestreet by DC resistance motherfucker!!!!!" but not identifying himself as being part of the

15    "DC resistance"); Opp'n Ex. A5 (stating, "The Kentucky Resistance is going to hang you by your

16    pussy lips and punish you," but not identifying himself as being part of "The Kentucky

17    Resistance"); Opp'n Ex. A7 (stating, "The Kentucky Resistance says they are going to cut your

18    throat from ear to ear and then your gook wife's," and using the word "they"); Opp'n Ex. A8

19    (stating, ". . . the Kentucky Resistance is going to totally execute you. They have stated youare a

20    deadman! And soon. We are so glad to hear that they are finally going to take action. We cannot

21    wait to know you are dead," and using the word "they").  It is true that Senator McConnell's staff

22    considered some of these messages threatening.  See, e.g., Opp'n Ex. A1 ("Please see below

23    threats that came in through our online message system").  But just as the statement, "Obama fk

24    the niggar, he will have a 50 cal in the head soon" was not a true threat, see Bagdasarian, 652 F.3d

25    at 1118–19, no reasonable jury could find that Weiss's statements predicting that other people

26    would harm Senator McConnell met the definition of true threats, see United States v. Toltzis,

27    No. 14-cr-00567-RMW, 2016 WL 3479084, at *3 (N.D. Cal. June 27, 2016) (stating standard);

28    see also New York ex rel. Spitzer v. Operation Rescue Nat'l, 273 F.3d 184, 196 (2d Cir. 2001)

United States District Court
Northern District of California

("generally, a person who informs someone that he or she is in danger from a third party has not made a threat, even if the statement produces fear.  This may be true even where a protestor tells the objects of protest that they are in danger and further indicates political support for the violent third parties.").

When the Court asked the government at the motion hearing which of Weiss's statements constituted a true threat, the government argued that violent talk was "sprinkled throughout" the emails, but it identified only one specific example.  The government relied only on Weiss's email of January 3, 2019, and the phrase: "we will get rid of your satanic evil ass."  This phrase is distinct from those the Court has just quoted in the paragraph above, because it uses the pronoun "we" to describe the primary actors.  But the complete sentence was: "You are going to lose next election and we will get rid of your satanic evil ass you loser fuckhead."  See Opp'n Ex. A3. Couched in the language of an election, "we will get rid of your satanic evil ass" is a political message familiar, in substance if not in form, to most political incumbents.  That the sentence before that sentence was "Someone needs to kill you," see id., does not change this analysis, as this is "an exhortation[] to others to injure or kill," see Bagdasarian, 652 F.3d at 119, rather than a threat that Weiss himself would inflict harm.

A statement is subjectively a true threat if the defendant "made the statements intending that they be taken as a threat."  Id. at 1122.  "The speaker need not actually intend to carry out the threat."  Black, 538 U.S. at 359–60.  Here, though the government asserted at the motion hearing that Weiss's conduct meets the subjective test for a true threat, it provided no support for that assertion.  In fact, the government asserts repeatedly in its briefing that Weiss had the intent to harass Senator McConnell, but never mentions an intent to threaten.  See, e.g., Opp'n at 1 ("Defendant Howard Weiss is charged with the harassing use of a telecommunications device . . . with intent to harass U.S. Senator Mitch McConnell.");  id. ("From October 2018 through October 2019, defendant used his cell phone to send a total of eight emails to Senator McConnell . . . with the intent to harass Senator McConnell");  Opp'n at 20 ("the references to Senator McConnell are simply direct and circumstantial evidence of defendant's intent to harass a specific person"),  id. at 21 (arguing that the relevant intent was the intent to harass, not the intent to convey a political

opinion).  The only evidence of Weiss's intent that the Court is aware of comes from Weiss's interview with law enforcement, in which he admitted to having an <u>intent to harass</u> the Senator, rather than to threaten him.  Opp'n Ex. A11 at 3:08–3:20, 4:50–5:17, 5:39–6:04, 6:40–6:45.  He told law enforcement that he decided to harass Senator McConnell because the senator made political decisions with which he disagreed.  <u>Id.</u> at 3:27–3:50, 5:39–6:04.  He admitted that he used racial slurs in furtherance of his intent to harass the Senator, saying, "that's just terrible harassment, that's just anger and bullshit."  <u>Id.</u> at 4:00–4:44.

Weiss's words were violent and repugnant, as even he seems to have eventually understood.[11]  But because he did not convey that he himself would harm Senator McConnell, and the government has not identified any basis for concluding that Weiss intended to threaten, rather than harass, the Senator, the "true threat" exception does not apply.

IV.    **CONCLUSION**

For the foregoing reasons, the statute does not pass intermediate scrutiny as applied to Weiss's speech, nor does Weiss's speech constitute either "speech integral to criminal conduct" or a "true threat."  The statute is unconstitutional as applied in this case.  Accordingly, the Court GRANTS the motion to dismiss the indictment.

**IT IS SO ORDERED.**

Dated: July 28, 2020

CHARLES R. BREYER
United States District Judge

---

[11] Weiss's late realization that his statements to Senator McConnell were "just terrible harassment . . . just anger and bullshit" brings to mind the Jerry Garcia lyrics: "The words come out like an angry stream/You hear yourself say things you could never mean/When you cool down you find your mind/You got a lot of words you've got to stand behind."  JERRY GARCIA, <u>Comes a Time</u>, on REFLECTIONS (Round Records 1976) (these lyrics available at https://www.lyrics.com/lyric/843912/Comes+a+Time; <u>see also</u> http://artsites.ucsc.edu/gdead/agdl/come.html).  While the Court concludes herein that Weiss's emails were protected political speech, Weiss would do well to cool down before sending any future political emails.

United States District Court
Northern District of California